Gage, J.
 

 Respondent Parole Board appeals by leave granted
 
 [1]
 
 a circuit court order reversing its decision to deny petitioner Tyrrell Hopkins parole. We reverse.
 

 On April 21, 1988, petitioner pleaded guilty to charges of armed robbery, MCL 750.529; MSA 28.797, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). He received
 
 *631
 
 a sentence of two to twenty years’ imprisonment for the armed robbery conviction, to be served consecutively to a two-year sentence for the felony-firearm conviction. After becoming eligible for parole, petitioner was denied parole several times.
 

 Petitioner’s most recent parole eligibility determination occurred on January 29, 1998, when respondent again denied petitioner parole. In a Notice of Action, respondent explained that, “having considered the facts and circumstances including the prisoner’s mental and social attitude,” it lacked reasonable assurance that petitioner did not represent a menace to society or the public safety. Respondent further listed the following reasons supporting its decision: (1) petitioner’s crime was assaultive in nature, arose in a multiple-offender situation, and involved a dangerous weapon, (2) petitioner failed in prior postconviction court-ordered juvenile programs, (3) petitioner had a history of substance abuse, and (4) petitioner’s social history indicated an unstable domestic history. Respondent recommended that to facilitate parole in the future, petitioner should “ [demonstrate positive change by working towards reduction in security classification,” and “[p]rovide additional demonstration of positive prison behavior during the [twelve-month] period of the continuance.”
 

 On February 25, 1998, petitioner sought leave to appeal to the Oakland Circuit Court, which granted leave. On August 5, 1998, the circuit court found that respondent had abused its discretion in denying petitioner parole. The court reasoned that the four factors stated in the Notice of Action were insufficient to support the parole denial because they were based on facts that were ten years old and therefore had little
 
 *632
 
 or no bearing on whether petitioner would pose a danger to society if released on parole. The court additionally noted that “in every instance Petitioner was considered for parole, the Parole Board member who conducted the [predecision] interview voted to grant parole.” Thus, the court reversed respondent’s decision and remanded to respondent with instructions that it parole petitioner within twenty-eight days. On August 31, 1998, the circuit court denied respondent’s motion for a stay of the court’s order that it grant petitioner parole. On the same day, however, this Court granted respondent’s motions for immediate consideration and leave to appeal, and also granted a stay of the circuit court’s order reversing respondent’s parole denial.
 

 i
 

 Respondent and the prosecutor now argue that the circuit court erred in finding that respondent abused its discretion in denying petitioner parole. Respondent and the prosecutor contend that the circuit court failed to consider petitioner’s entire record, which they argue supports respondent’s conclusion that it lacked reasonable assurance that petitioner, if released, would not become a menace to society or to the public safety.
 

 The Legislature has entrusted to the Parole Board the decision whether to grant or deny parole. MCL 791.234(8); MSA 28.2304(8). The Parole Board’s decision whether to parole a prisoner is reviewed for a “clear abuse of discretion.” MCR 7.104(D)(5)(b);
 
 In re Parole of Roberts,
 
 232 Mich App 253, 257; 591 NW2d 259 (1998). Generally, an abuse of discretion is found where an unprejudiced person, considering the
 
 *633
 
 facts on which the decisionmaker acted, would say there is no justification or excuse for the ruling.
 
 People v Ullah,
 
 216 Mich App 669, 673; 550 NW2d 568 (1996). The board’s discretion is limited, however, by statutory guidelines, and whether it abused its discretion must be determined in light of the record and these statutory requirements.
 
 In re Parole of Johnson,
 
 219 Mich App 595, 598; 556 NW2d 899 (1996). First and foremost, the board may not grant a prisoner liberty on parole until it “has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner’s mental and social attitude, that the prisoner will not become a menace to society or to the public safety.” MCL 791.233(l)(a); MSA 28.2303(l)(a). An aggrieved party bears the burden of demonstrating an abuse of discretion, and the reviewing court may not substitute its judgment for that of the Parole Board. MCR 7.104(D)(5);
 
 Wayne Co Prosecutor v Parole Bd,
 
 210 Mich App 148, 153-154; 532 NW2d 899 (1995).
 

 While the circuit court found that the four reasons stated by respondent were insufficient to support respondent’s decision, it failed to consider the portions of petitioner’s prison record that respondent submitted for consideration pursuant to MCR 7.104(D)(4)(c). In the event of an appeal of a Parole Board decision, MCR 7.104(D)(4)(c) specifically requires that respondent forward to the circuit court “the prisoner’s central office file at the Department of Corrections, and any other documents considered by the parole board in reaching its decision.” Our review of petitioner’s prison record reveals that since his incarceration in 1988, he has received at least sixty-eight misconduct citations. Ten of these citations
 
 *634
 
 were issued within the last five years for “major misconducts” including insolence, threatening behavior, disobeying a direct order, assault and battery, and interference with administration of rules. His prison record further indicates that during the last five years he received two security classification increases and that petitioner has a “Very High” assaultive risk classification and a “High” property risk classification. Respondent clearly contemplated this information in determining whether to grant petitioner parole; this information appears within a parole guideline scoresheet prepared within two weeks before respondent’s decision. Furthermore, respondent’s concern regarding petitioner’s prison record is reflected in respondent’s Notice of Action recommendations that petitioner reduce his security classification and demonstrate additional positive prison behavior. Considering petitioner’s significant prison misconduct together with the violent and assaultive nature of his underlying convictions, we cannot conclude that respondent abused its discretion in finding that no reasonable assurance existed that petitioner would not become a menace to society or to the public safety if released on parole. While petitioner’s prison behavior may have begun to improve since his previous parole denial, we do not find that respondent unjustifiedly required that petitioner evidence a longer period of satisfactory prison behavior before respondent releases him on parole. Because the circuit court improperly substituted its judgment for that of respondent,
 
 Wayne County Prosecutor, supra,
 
 we reverse the circuit court order reversing respondent’s denial of petitioner’s parole.
 

 
 *635
 
 n
 

 Respondent and the prosecutor also assert that, even assuming respondent abused its discretion in denying petitioner parole, the circuit court lacked authority to order respondent to release petitioner on parole because such an order violates the constitutional separation of powers doctrine.
 
 [2]
 
 Whether a violation of the separation of powers doctrine has occurred is a question of law that we review de novo.
 
 People v Sierb,
 
 456 Mich 519, 522; 581 NW2d 219 (1998). Given our decision to reverse the circuit court’s order, it is unnecessary that we decide this issue. We will address the issue, however, because it is of public significance and is likely to recur in the future.
 
 [3]
 

 Meyers v Patchkowski,
 
 216 Mich App 513, 519; 549 NW2d 602 (1996);
 
 People v Briseno,
 
 211 Mich App 11, 17; 535 NW2d 559 (1995). Moreover, although the trial court did not explicitly rule on this issue, we may nonetheless consider it for the first time on appeal because it is a question of law and the parties have presented all the necessary facts.
 
 D’Avanzo v Wise & Marsac, PC,
 
 223 Mich App 314, 326; 565 NW2d 915 (1997).
 

 The Michigan Constitution provides for the separation of the three branches of government as follows:
 

 
 *636
 
 The powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution. [Const 1963, art 3, § 2.]
 

 This separation of powers intends to preserve the independence of the three branches of government.
 
 In re 1976 PA 267,
 
 400 Mich 660, 662; 255 NW2d 635 (1977). “ ‘[WJhere the
 
 whole
 
 power of one department is exercised by the same hands which possess the
 
 whole
 
 power of another department, the fundamental principles of a free constitution are subverted.’ ”
 
 Soap & Detergent Ass’n v Natural Resources Comm,
 
 415 Mich 728, 752; 330 NW2d 346 (1982) (emphasis in original), quoting The Federalist No. 47 (J. Madison). The separation of powers doctrine does not, however, require so strict a separation as to provide no overlap of responsibilities and powers.
 
 Judicial Attorneys Ass’n v Michigan,
 
 459 Mich 291, 296; 586 NW2d 894 (1998). If the grant of authority to one branch is limited and specific and does not create encroachment or aggrandizement of one branch at the expense of the other, a sharing of power may be constitutionally permissible.
 
 Id.
 
 at 296-297;
 
 Mayor of City of Detroit v Michigan,
 
 228 Mich App 386, 410-411; 579 NW2d 378 (1998), vacated in part on other grounds
 
 Judicial Attorneys Ass’n v Michigan,
 
 460 Mich 590; 597 NW2d 113 (1999).
 

 The Department of Corrections originated within chapter 12 of the Executive Organization Act, MCL 16.375; MSA 3.29(275), and represents an administrative agency within the executive branch of Michigan’s government. Const 1963, art 5, § 2;
 
 People v Young,
 
 206 Mich App 144, 149; 521 NW2d 340 (1994), rev’d on
 
 *637
 
 other grounds sub nom
 
 Wayne Co Prosecutor v Dep’t of Corrections,
 
 451 Mich 569; 548 NW2d 900 (1996);
 
 Collins v Director, Dep’t of Corrections,
 
 153 Mich App 477, 481; 395 NW2d 77 (1986);
 
 Penn v Dep’t of Corrections,
 
 100 Mich App 532; 298 NW2d 756 (1980). The Parole Board was established as an entity within the Department of Corrections. MCL 791.231a; MSA 28.2301(1). Pursuant to a legislative grant of authority, the Department of Corrections possesses sole jurisdiction over questions of parole.
 

 Subject to constitutional powers vested in the executive and judicial departments of the state, the department shall have
 
 exclusive
 
 jurisdiction over the following: (a) Probation officers of this state, and the administration of all orders of probation, (b) pardons, reprieves, commutations and
 
 paroles,
 
 and (c) penal institutions, correctional farms, probation recovery camps, prison labor and industry, wayward minor programs and youthful trainee institutions and programs for the care and supervision of youthful trainees. [MCL 791.204; MSA 28.2274 (emphasis added).]
 

 “The release of a prisoner on parole shall be granted solely upon the initiative of the parole board.” MCL 791.235(1); MSA 28.2305(1). Furthermore, specific determinations whether to release prisoners on parole rest within the Parole Board’s discretion. MCL 791.234(8); MSA 28.2304(8). Accordingly, pursuant to these provisions, the executive branch, specifically the Parole Board, possesses exclusive discretion to grant or deny parole.
 

 Generally, three potential avenues of review exist by which an aggrieved party may challenge an administrative body’s decision: (1) review pursuant to a procedure specified in a statute applicable to the particular agency, (2) the method of review for contested
 
 *638
 
 cases under the Administrative Procedures Act (apa), MCL 24.201
 
 et seq.)
 
 MSA 3.560(101)
 
 et seq.,
 
 or (3) an appeal pursuant to § 631 of the Revised Judicature Act, MCL 600.631; MSA 27A.631, and Const 1963, art 6, § 28,
 
 [4]
 
 in conjunction with MCR 7.104(A).
 
 Attorney General v Public Service Comm,
 
 237 Mich App 82; _ NW2d _ (1999). We note that the apa does not apply to the review of the instant Parole Board decision whether to grant parole because the apa prescribes a standard of review applicable to “contested cases,” MCL 24.301; MSA 3.560(201), which are defined as proceedings “in which a determination of the legal rights, duties, or privileges of a named party is required by law to be made by an agency after an opportunity for an evidentiary hearing.” MCL 24.203(3); MSA 3.560(103)(3). In this case, no hearing was required before the Parole Board reached its decision whether to parole petitioner. Pursuant to the statutes governing the Parole Board, only a predecision interview may be required, MCL 791.235; MSA 28.2305, unless the parole determination involves “[a] prisoner under sentence for life or for a term of years . . . who has served 10 calendar years of the sentence ____” MCL 791.234(6)(b); MSA 28.2304(6)(b);
 
 Wayne
 
 
 *639
 

 Co Prosecutor v Parole Bd, supra
 
 at 153. Furthermore, the constitutional standard of review does not apply to this case, which involves neither a decision affecting a private right or license nor an evidentiary hearing.
 
 Id.
 
 at 152-153.
 

 The Parole Board’s discretionary determinations whether to grant parole are not, however, insulated from any judicial involvement or oversight. MCL 791.234(8); MSA 28.2304(8) provides that a prisoner, prosecutor, or crime victim may seek leave to appeal the Parole Board’s decision in the circuit court. The circuit court’s review is limited to ascertaining whether
 

 the decision of the parole board was
 

 (a) in violation of the Michigan Constitution, a statute, an administrative rule, or a written agency regulation that is exempted from promulgation pursuant to MCL 24.207; MSA 3.560(107), or
 

 (b) a clear abuse of discretion. [MCR 7.104(D)(5).]
 

 MCR 7.104(D)(7) and (8) further explain that the circuit court may return a matter to the Parole Board and require that it undertake certain actions;
 

 (7)
 
 Motion to Remand.
 
 On timely motion by a party, or on the court’s own motion,
 
 the court may remand the matter to the parole board for an eocplanation of its decision.
 
 The parole board shall hear and decide the matter within 28 days of the date of the order, unless the board determines that an adjournment is necessary to obtain evidence or that there is other good cause for an adjournment. The time to file briefs on appeal under MCR 7.104(D)(4)(d) is tolled while the matter is pending on remand.
 

 (8)
 
 Parole Board Responsibility After Reversal or Remand. If a decision of the parole board is reversed or remanded,
 
 the board shall review the matter and
 
 take action consistent with the circuit court’s decision
 
 within
 
 *640
 
 28 days.
 
 If the circuit court order requires the board to undertake further review of the file or to reevaluate its prior decision,
 
 the board shall provide the parties with an opportunity to be heard. An appeal to the Court of Appeals does not affect the board’s jurisdiction to act under this subsection. [Emphasis added.]
 

 These provisions clearly contemplate some judicial review of Parole Board decisions.
 

 Respondent and the prosecutor contend that the circuit court in this instance exceeded the scope of permissible judicial review and infringed on the Parole Board’s exclusive authority to parole prisoners when it specifically ordered that on remand the Parole Board release petitioner. Our resolution of this issue requires that we apply the rules of statutory construction, which also apply to court rules.
 
 McAuley v General Motors Corp,
 
 457 Mich 513, 518; 578 NW2d 282 (1998). The primary rule of statutory construction is to determine and effectuate the intent of the Legislature through reasonable construction in consideration of the purpose of the statute and the object sought to be accomplished.
 
 Frankenmuth Mut Ins Co v Marlette Homes, Inc,
 
 456 Mich 511, 515; 573 NW2d 611 (1998). Discerning the drafters’ intent begins with an examination of the language employed.
 
 People v Borchard-Ruhland,
 
 460 Mich 278, 284; 597 NW2d 278 (1999). If the plain and ordinary meaning of the language is clear, the statute or rule must be enforced as written; no further judicial construction is required or permitted.
 
 Sun Valley Foods Co v Ward,
 
 460 Mich 230, 236; 596 NW2d 119 (1999).
 

 Our consideration and analysis of the language within various provisions of chapter m of the Department of Corrections act, MCL 791.231
 
 et seq.;
 
 MSA
 
 *641
 
 28.2301
 
 et seq.,
 
 and within MCR 7.104(D) compels us to conclude that the circuit court acted beyond its authority in specifically ordering petitioner’s parole, thus violating the constitutional separation of powers doctrine. We first note that the Legislature conferred on the Department of Corrections
 
 “exclusive
 
 jurisdiction” over paroles. MCL 791.204(b); MSA 28.2274(b) (emphasis added). “Exclusive” is defined within Black’s Law Dictionary (6th ed)
 
 [5]
 
 as
 

 [appertaining to the subject alone, not including, admitting, or pertaining to any others. Sole. Shutting out; debarring from interference or participation; vested in one person alone. Apart from all others, without the admission of others to participation.
 

 Similarly, MCL 791.235(1); MSA 28.2305(1) provides for a grant of parole
 
 “solely
 
 upon the initiative of the parole board.” (Emphasis added.) “Sole” signifies “[s]ingle; individual; separate; the opposite of joint .... Comprising only one person; the opposite of aggregate .... Without another or others.” Black’s Law Dictionary,
 
 supra.
 
 This statutory language clearly and unambiguously vests the Department of Corrections and the Parole Board, executive branch entities, with the right “apart from all others” to grant prisoners parole.
 

 Petitioner appears to argue that the legislative provision for circuit court review, MCL 791.234(8); MSA 28.2304(8), would be inconsequential unless the term “reverse” within MCR 7.104(D)(8) were construed as giving the circuit court the right to order the Parole
 
 *642
 
 Board to release a prisoner on finding that the board abused its discretion in denying parole. According to petitioner, a conclusion that the circuit court cannot order respondent to parole a prisoner would render judicial review meaningless and create the absurd result of permitting the Parole Board to maintain a position even after that position has been deemed an abuse of discretion. MCR 7.104(D)(8) contemplates that a Parole Board decision whether to grant parole may be reversed or the matter may be remanded. In reversing a Parole Board decision, the circuit court simply undoes it; to “reverse” means
 

 [t]o overthrow, vacate, set aside, make void, annul, repeal, or revoke; as, to reverse a judgment, sentence or decree of a lower court by an appellate court, or to change to the contrary or to a former condition. To reverse a judgment means to overthrow it by contrary decision, make it void, undo or annul it for error. [Black’s Law Dictionary,
 
 supra
 
 (citations omitted). ][
 
 6
 
 ]
 

 In remanding a decision to the Parole Board, the circuit court does not specifically overrule it, but simply returns it to the Parole Board for some further consideration or activity. To “remand” is
 

 [t]o send back. The act of an appellate court when it sends a case back to the trial court and orders the trial court to conduct limited new hearings or an entirely new trial, or to take some other further action.
 
 [Id].
 

 Thus, while petitioner suggests the court rule’s language anticipating reversal and requiring the Parole Board to “take action consistent with the circuit
 
 *643
 
 court’s decision” must imply that circuit courts are able to order prisoners’ releases, no language within the rule contemplates that courts have this power.
 

 Furthermore, petitioner’s contention that, without the power to grant parole, the circuit court’s judicial review is meaningless lacks merit. That circuit court review of Parole Board decisions is limited does not render it meaningless. While the Parole Board has broad discretion in determining whether to grant a prisoner parole, this discretion remains subject to legislative restraints.
 
 [7]
 

 In re Parole of Johnson, supra
 
 at
 
 *645
 
 597-599. Pursuant to MCR 7.104(D)(5), the circuit court may review the Parole Board’s decision to ensure that the board complied with the constitution, the statutory provisions, and applicable administrative rules, and, if so, that the board did not otherwise commit a clear abuse of discretion. As MCR 7.104(D)(8) contemplates, the court may reverse the Parole Board’s decision or order further action con
 
 *646
 
 sistent with the applicable constitutional, statutory, and administrative provisions. While the court may order that the Parole Board conform its conduct to the applicable provisions, no applicable provision authorizes the court to order that the Parole Board release a prisoner on parole.
 

 Because the Parole Board possesses the Department of Corrections’ exclusive jurisdiction over parole matters and because the judiciary may exercise only limited review of Parole Board decisions, which review does not encompass the authority to order prisoners’ parole, the circuit court’s order that respondent release petitioner violated the constitution. Const 1963, art 3, § 2. The court improperly exceeded the limited scope of its review and assumed the executive’s prerogative with respect to whether petitioner should be granted parole.
 
 [8]
 
 Petitioner main
 
 *647
 
 tains that our decision creates the absurd situation in which, “if the court’s only recourse is to remand the matter back to the Parole Board without also having the authority to order the Board to take action consistent with the order of the court . . . the ‘ping pong’[
 
 9
 
 ]
 
 *648
 
 game could continue indefinitely without a resolution.” Petitioner’s imagined situation seems to presume an antagonistic relationship between the circuit court and the Parole Board and a blind, stubborn adherence by both the circuit court and the Parole Board to a particular position; we will not assume the existence of such a relationship or such behavior.
 
 In re Casella,
 
 313 Mich 393, 401; 21 NW2d 175 (1946) (Courts may not assume that clearly defined powers and duties of administrative officers will be abused, or that the duties as prescribed by law will not be observed.). More importantly, to the extent that our decision does result in the repeated travel of a prisoner seeking parole from the Parole Board to the circuit court and back again, this result is required because the Legislature has empowered respondent with the exclusive authority to grant parole. The circuit court may not constitutionally compel the Parole Board to exercise its executive authority by releasing a prisoner on parole. Our sanction of the circuit court’s behavior in this manner would require that we ignore the “ ‘indispensable ingredient of the concept of coequal branches of government . . . that “each branch must recognize and respect the limits on its own authority and the boundaries of the authority delegated to the other branches.” ’ ”
 
 Judicial Attorneys Ass’n, supra,
 
 459 Mich 304-305, quoting
 
 Employees & Judge of the Second Judicial Dist Court v
 
 
 *649
 

 Hillsdale Co,
 
 423 Mich 705, 717; 378 NW2d 744 (1985), quoting
 
 United States v Will,
 
 449 US 200, 228; 101 S Ct 471; 66 L Ed 2d 392 (1980).
 

 Reversed.
 

 [1]
 

 This Court also granted the Oakland County Prosecutor’s motion to intervene.
 

 [2]
 

 Respondent additionally states that “a Circuit Court may not order the Michigan Parole Board to release an inmate on parole because such an order would constitute a . . . violation of the indeterminate sentencing rule." Because respondent has failed to argue the merits of this issue in its brief, however, we will not consider this assertion.
 
 Meagher v Wayne State Univ,
 
 222 Mich App 700, 718; 565 NW2d 401 (1997).
 

 [3]
 

 Indeed, this identical issue has arisen in another appeal assigned to this same panel’s case call.
 

 [4]
 

 This constitutional section, titled “Administrative action, review,” states in relevant part as follows:
 

 All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record. [Const 1963, art 6, § 28.]
 

 [5]
 

 Reference to a dictionary is appropriate to ascertain the ordinary meaning of a word.
 
 Popma v Auto Club Ins Ass’n,
 
 446 Mich 460, 470; 521 NW2d 831 (1994).
 

 [6]
 

 See also “Reversal”: “The annulling or setting aside by an appellate court of a decision of a lower court.” Black’s Law Dictionary,
 
 swpra.
 

 [7]
 

 Statutory provisions limiting the Parole Board’s discretion include MCL 791.233(1); MSA 28.2303(1), which conditions the board’s grant of parole as follows:
 

 (a) A prisoner shall not be given liberty on parole until the board has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner’s mental and social attitude, that the prisoner will not become a menace to society or to the public safety.
 

 (b) Except as provided in section 34a [involving special alternative incarceration units], a parole shall not be granted to a prisoner other than a prisoner subject to disciplinary time until the prisoner has served the minimum term imposed by the court less allowances for good time or special good time to which the prisoner may be entitled by statute, except that a prisoner other than a prisoner subject to disciplinary time is eligible for parole before the expiration of his or her minimum term of imprisonment whenever the sentencing judge . . . gives written approval of the parole of the prisoner before the expiration of the minimum term of imprisonment.
 

 (c) Except as provided in section 34a, and notwithstanding the provisions of subdivision (b), a parole shall not be granted to a prisoner other than a prisoner subject to disciplinary time sentenced for the commission of a crime described in section 33b(a) to (cc) until the prisoner has served the minimum term imposed by the court less an allowance for disciplinary credits as provided in section 33(5) of 1893 PA 118, MCL 800.33 [MSA 28.1403], A prisoner described in this subdivision is not eligible for special parole.
 

 (d) Except as provided in section 34a, a parole shall not be granted to a prisoner subject to disciplinary time until the prisoner has served the minimum term imposed by the court.
 

 
 *644
 
 (e) A prisoner shall not be released on parole until the parole board has satisfactory evidence that arrangements have been made for such honorable and useful employment as the prisoner is capable of performing, for the prisoner’s education, or for the prisoner’s care if the prisoner is mentally or physically ill or incapacitated.
 

 (f) A prisoner whose minimum term of imprisonment is 2 years or more shall not be released on parole unless he or she has either earned a high school diploma or earned its equivalent in the form of a general education development (ged) certificate.
 

 Pursuant to MCL 791.233e; MSA 28.2303(6), the Parole Board’s discretionary decisions are governed by parole guidelines located at 1996 AACS, R 791.7715, R 791.7716. MCL 791.235; MSA 28.2305 also places limitations on the Parole Board:
 

 (1) The release of a prisoner on parole shall be granted solely upon the initiative of the parole board. The parole board may grant a parole without interviewing the prisoner. However, beginning on the date on which the administrative rules prescribing parole guidelines pursuant to section 33e(5) take effect, the parole board may grant a parole without interviewing the prisoner only if, after evaluating the prisoner according to the parole guidelines, the parole board determines that the prisoner has a high probability of being paroled and the parole board therefore intends to parole the prisoner. Except as provided in subsection (2), a prisoner shall not be denied parole without an interview before 1 member of the parole board. . . . The parole board shall consider any statement made to the parole board by a crime victim .... The parole board shall not consider any of the following factors in making a parole determination:
 

 (a) A juvenile record that a court has ordered the department to expunge.
 

 (b) Information that is determined by the parole board to be inaccurate or irrelevant after a challenge and presentation of relevant evidence by a prisoner who has received a notice of intent to conduct an interview ....
 

 (2) . . . [I]f, after evaluating a prisoner according to the parole guidelines, the parole board determines that the prisoner has a low probability of being paroled and the parole board therefore does not intend to parole the prisoner, the parole board shall not be required to interview the prisoner before denying parole to the prisoner.
 

 (3) The parole board may consider but shall not base a determination to deny parole solely on either of the following:
 

 (a) A prisoner’s marital history.
 

 (b) Prior arrests not resulting in conviction or adjudication of delinquency.
 

 
 *645
 
 (4) If an interview is to be conducted, the prisoner shall be sent a notice of intent to conduct an interview at least 1 month before the date of the interview. The notice shall state the specific issues and concerns that shall be discussed at the interview and that may be a basis for a denial of parole. A denial of parole shall not be based on reasons other than those stated in the notice of intent to conduct an interview except for good cause stated to the prisoner at or before the interview and in the written explanation required by subsection (12). . . .
 

 (5) Except for good cause, the parole board member conducting the interview shall not have cast a vote for or against the prisoner’s release before conducting the current interview. Before the interview, the parole board member who is to conduct the interview shall review pertinent information relative to the notice of intent to conduct an interview.
 

 (7) . . . [A] parole eligibility report shall be prepared by appropriate institutional staff. The parole eligibility report shall be considered pertinent information for purposes of subsection (5). . . .
 

 (10) The parole board may grant a medical parole for a prisoner determined to be physically or mentally incapacitated. A decision to grant a medical parole . . . shall be reached only after a review of the medical, institutional, and criminal records of the prisoner.
 

 (12) When the parole board makes a final determination not to release a prisoner, the prisoner shall be provided with a written explanation of the reason for denial and, if appropriate, specific recommendations for corrective action the prisoner may take to facilitate release.
 

 [8]
 

 For an example of a more limited, constitutional judicial involvement in the primarily executive parole determination, see
 
 Collins, supra.
 
 The plaintiff in
 
 Collins
 
 argued that MCL 791.234(4)(b) (now [6][b]); MSA 28.2304(4)(b) (now [6][b]), which permitted the sentencing judge in certain circumstances to block a prisoner’s parole by objecting in writing, improperly vested the judiciary with executive powers.
 
 Collins, supra
 
 at 481. This Court rejected the plaintiff’s argument, concluding that the Legislature may create a parole system primarily within the executive branch of government which, in specific limited categories of cases, is subject to a judicial veto, without being in violation of the constitutional separation of powers doctrine:
 

 In the case before us, the statute in question vests a limited, intermediate function in a judge to temporarily veto the granting of parole in a limited category of cases, subject to the final power of the Governor as the chief executive officer to release by pardon or commutation of sentence. Thus, in each case the chief executive officer, in his discretion, may release the prisoner. The Governor makes the final decision as to release pursuant to the constitutional mandate of Const 1963, art 5, § 14.
 
 The statute in question does not permit a judge to order the release of a prisoner on parole.
 
 The statute merely vests in a judge the power to veto the release of a prisoner on parole, or in other words, to continue the
 
 *647
 
 execution of the life sentence previously imposed by such judge or his predecessor. Objection to release on parole is not the amendment of a valid sentence without constitutional or statutory authority. It is the exercise of a specific, limited statutory function.
 
 [Collins, supra
 
 at 482 (emphasis added).]
 

 The
 
 Collins
 
 Court’s decision was reaffirmed in
 
 People v Raihala,
 
 199 Mich App 577, 580-581; 502 NW2d 755 (1993). The limited, temporary judicial parole veto power involved in
 
 Collins
 
 is distinguishable from the instant circuit court’s usurpation of the Parole Board’s ultimate authority to either grant or deny parole.
 

 [9]
 

 Petitioner quotes the circuit court, which apparently imagined an endless, unbreakable series of disagreements between the court and the Parole Board:
 

 The Court:
 
 Suppose I had not ordered the Parole Board to release [petitioner] . . .?
 

 Respondent’s
 
 counsel: Yes, your Honor.
 

 The Court: . .
 
 . but I had found that the Parole Board abused it’s [sic] discretion and he should be released, what’s the next step?
 

 Respondent’s counsel:
 
 That’s one in the same thing. If you had found—our argument—
 

 The Court:
 
 How does the guy get out?
 

 Wait. How does he get out?
 

 Respondent's counsel:
 
 He gets out upon reconsideration of the Michigan Parole Board.
 

 If you had found an abuse of discretion, remanded it back to the Parole Board for reconsideration, they could at that time review him and make another decision on whether to release him on parole. By you usurping the -
 

 The Court:
 
 What happens—
 

 Petitioner’s counsel:
 
 Within 28 days.
 

 The Court:
 
 What happens if they decide in their reconsideration that they were justified and they want to keep him; then what happens?
 

 Respondent’s counsel:
 
 Then he does not get released on parole.
 

 The Court:
 
 Then he comes back to me.
 

 
 *648
 

 Respondent’s counsel:
 
 Yes, he does, your Honor.
 

 The Court:
 
 And I make the same ruling and he goes back to you.
 

 Respondent’s counsel:
 
 That’s exactly what happens, your Honor.
 

 The Court:
 
 You’re playing ping pong.
 

 Respondent’s counsel:
 
 Pardon?
 

 The Court:
 
 You’re playing ping pong with this guy.