HARBOR TELEGRAPH 2103, LLC V OAKLAND COUNTY
BOARD OF COMMISSIONERS

Docket Nos. 239211, 239246, 239249, 239255. Submitted July 10, 2002, at
Detroit. Decided September 6, 2002, at 9:05 A.M. Leave to appeal
sought.

Harbor Telegraph 2103, L.L.C., and others (the Harbor Companies),
owners of land that had been successfully detached from the juris-
diction of Bloomfield Charter Township and annexed to the city of
Pontiac, brought an action in the Oakland Circuit Court against the
Oakland County Board of Commissioners and two individual com-
missioners, seeking declaratory relief and challenging both the
validity of township petitions to reclaim the annexed property
through the statutory process of detachment and the authority of
the board of commissioners to verify the detachment petitions and
schedule a detachment election. After the complaint was filed, the
Oakland County Executive vetoed the board of commissioners' res-
olution to schedule a detachment election. The Oakland County
Executive was joined as a defendant in the action, the city of Pon-
tiac intervened as a plaintiff, and the township intervened as a
defendant. The court, Richard D. Kuhn, J., entered orders finding
that the county executive's veto was invalid and that voters within
the township and the city had the right to vote in a detachment
election. The township, the county executive, the Harbor Compa-
nies, and the city brought separate appeals by leave granted. The
appeals were consolidated.

The Court of Appeals *held*:

1. The separation of powers doctrine stated in Const 1963, art 3,
§ 2 applies only to the state level of government and therefore does
not apply to this action involving local governmental units.

2. The county executive possessed the statutory authority, pursu-
ant to MCL 45.561, to veto the board of commissioners' detachment
resolution.

3. No conflict exists between MCL 117.8, which authorizes the
board of commissioners to adopt resolutions verifying detachment
petitions, and MCL 45.561, which authorizes the county executive
to veto resolutions of the board of commissioners, limited by only
four enumerated exceptions not relevant in this matter.

4. The county executive vetoed properly the detachment resolution. Because the board failed to override the veto, the resolution had no effect and could not form the basis for scheduling a detachment election.

Reversed and remanded.

1. CONSTITUTIONAL LAW — SEPARATION OF POWERS.

· The separation of powers doctrine stated in Const 1963, art 3, § 2 applies only to the state level of government; it does not apply to local governmental units.

2. COUNTIES — COUNTY EXECUTIVES — VETO AUTHORITY.

A county executive of a county that adopts the optional unified form of county government designating a county executive possesses broad authority to veto ordinances and resolutions adopted by the county board of commissioners except with regard to four enumerated exceptions; the exceptions do not include an exception for detachment resolutions (MCL 45.551, 45.552[1], 45.561).

*Honigman Miller Schwartz & Cohn* (by *Susan K. Friedlaender, Barry Howard,* and *Norman Hyman*) for Harbor Telegraph 2103, L.L.C., Bloomfield Acres Acquisition Company, L.L.C., Harbor Telegraph 1881, L.L.C., Harbor Telegraph 1899, L.L.C., and Harbor Vogue Plaza, L.L.C.

*Poling, McGaw & Poling, P.C.* (by *Richard B. Poling Jr.*), for the Oakland County Board of Commissioners.

*Kupelian Ormond & Magy, P.C.* (by *Stephen P. Ormond* and *Elaine A. Murphy*), for the city of Pontiac.

*Secrest, Wardle, Lynch, Hampton, Truex & Morley* (by *William P. Hampton, Gerald A. Fisher, Sam J. Faycurry,* and *Janet Callahan Barnes*), and *Foster, Swift, Collins & Smith, P.C.* (by *William K. Fahey*), for Bloomfield Charter Township.

*Carson Fischer, P.L.C.* (by *Robert M. Carson, Karen H. Safran,* and *Gregory T. Obloy*), for the Oakland County Executive.

Before: GAGE, P.J., and CAVANAGH and WILDER, JJ.

GAGE, P.J. This case involves efforts to detach a parcel of land that had been successfully detached from the jurisdiction of intervening defendant Bloomfield Charter Township and annexed to that of intervening plaintiff city of Pontiac. See *Bloomfield Charter Twp v Oakland Co Clerk*, 253 Mich App 1; 654 NW2d 610 (2002). The corporate entity plaintiffs (the Harbor Companies), which own the area of land in dispute, commenced the instant action for declaratory relief by filing a complaint challenging the validity of township petitions to reclaim the annexed property through the statutory process of detachment and the authority of defendant Oakland County Board of Commissioners to verify the detachment petitions and schedule a detachment election. After the Harbor Companies filed their complaint, the Oakland County Executive vetoed the board of commissioners' resolution to schedule a detachment election and was joined as a defendant in the action. The circuit court entered two separate orders, which ultimately concluded that the executive's veto was invalid and to which the parties raise various challenges. We reverse and remand.

I

A

Given the expedited nature of the circuit court proceedings, the factual record is less than complete, but

permits the following summary of background facts. The Harbor Companies owned land in Bloomfield Township that they wished to develop, but the township refused to permit the proposed development. Consequently, the Harbor Companies initiated efforts to have their land annexed to the adjoining city of Pontiac, which apparently had expressed support for the proposed development. In an annexation election that took place on September 11, 2001, voters in Pontiac and the area of the township to be annexed approved the annexation. *Bloomfield Charter Twp*, *supra* at 9.[1]

Shortly before the occurrence of the annexation election, the township entered an agreement with the city of Birmingham to transfer property, including a portion of the land within the annexation area, pursuant to 1984 PA 425 (Act 425), MCL 124.21 *et seq.*[2] The agreement between the township and the city of Birmingham, dated August 30, 2001, appears to reflect the township's effort to shield the property from the annexation election.[3]

Following the approval of the annexation measure in the September 2001 election, the township initiated efforts to reclaim the annexed property by filing

---

[1] In *Bloomfield Charter Twp*, this panel affirmed the circuit court's refusal to enjoin the annexation election and the court's dismissal of the remaining counts of the township's complaint challenging the legality of the annexation petitions. We note that, according to the parties to the instant case, after the annexation election some Bloomfield Township voters filed a quo warranto action challenging the annexation election pursuant to MCL 600.4545.

[2] The act authorizes that under certain circumstances "[t]wo or more local units may conditionally transfer property for a period of not more than 50 years for the purpose of an economic development project." MCL 124.22(1).

[3] According to the parties, the Harbor Companies filed a separate Oakland Circuit Court action challenging the Act 425 agreement.

detachment petitions with the county clerk on October 26, 2001, pursuant to MCL 117.8.[4] The county board of commissioners reviewed the number of petition signers and their voter registration status, the content of the petitions and the petitions' description of the area proposed for detachment, and concluded that the detachment petitions satisfied the requirements of MCL 117.6 and MCL 117.8. On December 13, 2001, the board of commissioners adopted miscellaneous resolution #01305 verifying the detachment petitions and scheduling a detachment election for February 5, 2002. Also on December 13, 2001, the Harbor Companies initiated the instant action.

On December 21, 2001, the county executive vetoed the detachment resolution by the board of commissioners. The county executive explained that the petitions incorrectly identified the area proposed for detachment as a part of Bloomfield Township instead of Pontiac, that the map attached to the detachment petitions included "not only the purported detachment area but also additional parcels not included in the detachment effort," and that the legal status of the detachment area was uncertain in light of several pending litigations involving the land. The county executive also mentioned that the board of commissioners improvidently had ignored the advice of the county's corporation counsel regarding the detachment petitions and resolution, and improperly retained the services of an outside counsel.

---

[4] According to the Harbor Companies' complaint, the detachment petitions had several defects, including that they improperly encompassed a portion of the land that the township had agreed to transfer to Birmingham under the Act 425 agreement.

B

The Harbor Companies filed their complaint for declaratory relief against the county board of commissioners and two individual members of the board. The complaint contained the following relevant claims: count I sought a declaration that the detachment petitions were invalid because they described the detachment area as a part of Bloomfield Township and contained maps inaccurately depicting the area proposed for detachment;[5] count III requested that the circuit court declare the board of commissioners without jurisdiction to consider the validity of the detachment petitions in light of the pending lawsuits regarding the annexation of the area at issue and the Act 425 agreement, which actions might affect the legal jurisdiction of the detachment area and the validity of the detachment petitions and election; and count IV sought a declaration that the board of commissioners' adoption of a resolution verifying the detachment petitions was invalid on the basis that two individual commissioners participated in the circulation and signing of detachment petitions.[6]

On December 26, 2001, the township filed a motion to intervene that also requested the circuit court's addition of the county executive as a defendant. The township requested an expedited hearing by the circuit court in light of the rapidly approaching February 5, 2002, detachment election, for which the township already had commenced preparations. The township

---

[5] Although not relevant to this appeal, the Harbor Companies also suggested that the detachment petitions contradicted the terms of the purported Act 425 agreement.

[6] We note that count II, entitled "Declaratory Relief as to the Tabulation of the Votes of the Affected Areas" is not at issue in this appeal.

described itself as a necessary party under MCR 2.205(A) and also suggested that it had a right to intervene according to MCR 2.209(A)(3) given its incurrence of substantial expense in preparation for the detachment election, its interest in recovering jurisdiction of the previously annexed parcel, and its interest "in protecting the rights of its citizens to vote."

Regarding the merits of its legal position in favor of the holding of the detachment election, the township argued that because MCL 117.8 vests in the county board of commissioners the exclusive authority to determine with finality the validity of detachment petitions, the county executive's veto constituted a nullity. The township suggested that the county executive's veto powers were derived from a distinct statute that did not authorize a veto in the context of a detachment proceeding. The township argued in the alternative that because the "scope of the County's review [of petitions] under [MCL 117.8] is limited to the ministerial determination whether the petition complies with statutory requirements," "both the Commissioners and [Executive] are bound by the same ministerial duty to submit the question to electors." The township requested a writ of mandamus compelling the holding of the scheduled detachment election.

The circuit court scheduled a hearing for December 28, 2001, to address the propriety of the township's intervention. The court further ordered that the county executive appear as a party defendant to "show cause as to why his veto of the Board of Commissioners resolution shall not be set aside and held for naught."

The December 28 hearing constituted the sole circuit court hearing that took place. At the hearing, the court ruled that the township and Pontiac could intervene in the lawsuit.[7] The court also entertained the county executive's contention that he did not belong in the case because he had not been afforded due process. The executive argued that the court should dismiss him on the basis that none of the parties to the action had filed a pleading naming him as a party defendant. The circuit court explained that it had ordered the executive's presence "out of courtesy" to afford him an opportunity to raise arguments regarding the validity of his veto. The court offered to dismiss the executive from the case, but ultimately did not do so after the executive decided to "withhold the issue" of dismissal. With respect to another procedural matter raised by the Harbor Companies, the court refused to order consolidation of the instant detachment case with the pending lawsuits involving the annexation and Act 425 agreement on the basis that the cases involved different issues and different parties.

The township reiterated its arguments regarding the invalidity of the county executive's veto of the board of commissioners' detachment resolution.[8] The executive averred that MCL 45.561 endowed him with far-reaching discretion to veto resolutions by the board of commissioners subject to only four limited exceptions and that resolutions scheduling detachment elections did not come within one of these nar-

---

[7] The court entered orders indicating that it had granted the motions to intervene pursuant to MCR 2.209.

[8] The board of commissioners concurred in the township's arguments.

row exceptions.[9] At the close of the hearing, the circuit court indicated that within the week the parties could "file any kind of briefs, replies, or whatever you want to do."

Following the parties' submissions of additional briefs, the circuit court issued an opinion and order on January 11, 2002.[10] The court found that the township had standing to intervene in the action on the basis of its interest in the detachment area and its "interest in seeing that its citizens have the opportunity to vote at the [detachment] election." The court concluded that MCL 45.561 vested the county executive with the authority to veto the board of commissioners' detachment resolution. The court explained that the executive's veto did not constitute a "proceeding" questioning the sufficiency or legality of the detachment petitions, which MCL 117.8 forbids, and distinguished cases cited by the township on the basis that they did not involve vetoes by county executives. In response to the board of commissioners' suggestion that recognizing the authorization of an executive veto of detachment resolutions in only three Michigan counties would create an "absurdity," the court observed that Oakland County voters had chosen their statutorily authorized form of government.

The court lastly requested further briefs from the parties regarding the following issues related to the

---

[9] The county executive also suggested that any legal action against him qualified as unripe in light of the fact that the board of commissioners had not yet determined whether to override the executive veto. The board ultimately failed to override the veto by the required two-thirds majority vote, and the issue of ripeness is not involved in this appeal.

[10] In Docket No. 239246, the township appeals from the January 11, 2002, order.

township's request for a writ of mandamus requiring the executive to approve the board's detachment resolution:

> 1. Is the County Executive's approval or disapproval (veto) of the detachment petition pursuant to MCL 45.561 a purely ministerial function?
>
> 2. Assuming it is a purely ministerial function, but a factual dispute exists between the Board and the County Executive regarding whether the detachment petition meets the statutory requirements, may the Court resolve the factual dispute in order to determine whether or not to issue a Writ of Mandamus compelling the County Executive to approve the Board's resolution?

As requested, the parties filed supplemental briefs.[11]

On January 29, 2002, the circuit court entered a declaratory judgment ordering that voters within the township and Pontiac had the right to vote in a February 5, 2002, detachment election. The court explained that the board of commissioners' duty to determine the validity of detachment petitions according to relevant statutory requirements plainly involved a purely ministerial function. The court reasoned that because the board's duty regarding the petitions involved a ministerial function, the county executive's approval or disapproval also consequently constituted a ministerial function. According to the court, a contrary decision would ignore the legislative intent within MCL 117.8 that the filing of a detachment petition meeting the relevant statutory requirements should entitle citizens to vote regarding the detachment. The court concluded that because the

---

[11] The county executive had filed a motion for dismissal from the action, but the court declined to address the issue because "[t]hat motion is not before the Court at this time."

detachment petitions in this case achieved substantial compliance with statutory requirements, "the voters of both the City of Pontiac and Charter Township of Bloomfield are entitled to vote on the detachment issue," and that a "vote on the detachment issue should go forward . . . notwithstanding the county executive's veto."[12]

II

We first address the arguments by the county executive, the Harbor Companies, and Pontiac that the circuit court violated the separation of powers doctrine in substituting its judgment for the judgment exercised by the county executive when he vetoed the board's resolution and the judgment exercised by the board when it failed to override the executive veto. Whether a violation of the separation of powers doctrine has occurred is a question of law that this Court reviews de novo. *Hopkins v Parole Bd*, 237 Mich App 629, 635; 604 NW2d 686 (1999).

We conclude that the circuit court did not violate the separation of powers doctrine in considering the question of the county executive's veto authority for the simple reason that the separation of powers doctrine stated in Const 1963, art 3, § 2 applies only to

---

[12] Docket Nos. 239211, 239249, and 239255 all involve challenges, by the county executive, the Harbor Companies, and Pontiac, respectively, to the circuit court's January 29, 2002, declaratory judgment order. On February 4, 2002, this Court granted the four applications for leave to appeal in this case, consolidated them for appeal, and granted a stay of the February 5, 2002, detachment election and any further circuit court proceedings pending resolution of the instant appeals. The circuit court's January 29 order, which was not a final order, left unresolved some issues raised by the parties, including the alleged conflict of interest of the individual county commissioner defendants and the county executive's motion to be dismissed from the case.

the state level of government and therefore does not apply to local governmental units. *Rental Property Owners Ass'n of Kent Co v Grand Rapids,* 455 Mich 246, 266-268; 566 NW2d 514 (1997); *Armstrong v Ypsilanti Charter Twp,* 248 Mich App 573, 586-588; 640 NW2d 321 (2001).

### III

We next address the central question presented by this case, whether the county executive possessed the authority to veto the resolution by the county board of commissioners that verified the detachment petitions and scheduled a detachment election.[13] We review de novo the legal questions involved in statutory interpretation. *In re MCI Telecommunications Complaint,* 460 Mich 396, 413; 596 NW2d 164 (1999).

### A

Our primary goal in interpreting a statute is to ascertain and give effect to the Legislature's intent in drafting the statute. When the statutory language involved appears clear and unambiguous on its face, we must presume that the Legislature intended the meaning it plainly expressed; judicial construction is neither permitted nor required, and we must enforce the statute as written. *Pohutski v City of Allen Park,* 465 Mich 675, 683; 641 NW2d 219 (2002); *In re MCI, supra* at 411. "[C]ourts may not speculate about an unstated purpose where the unambiguous text plainly

---

[13] Because we find the issue of the county executive's veto authority clearly dispositive of this case, we will assume for the sake of argument that the detachment petitions substantially complied with statutory requirements.

reflects the intent of the Legislature." *Pohutski, supra* at 683. Courts must accord the words of a statute their plain and ordinary meanings and should look beyond the statutory language itself to ascertain legislative intent only when the statutory language appears ambiguous. *Id.*; *In re MCI, supra.*

The parties rely on two distinct statutory provisions to support their arguments regarding the county executive's authority to veto a resolution of the county board of commissioners regarding detachment. The township and the board of commissioners refer to a section of the Home Rule City Act, MCL 117.1 *et seq.*, specifically MCL 117.8, which delineates as follows the responsibilities of a board of commissioners on its receipt of detachment petitions:

> Said petition [for boundary alteration in accordance with MCL 117.6] shall be addressed to the board of supervisors of the county in which the territory to be affected by such proposed incorporation, consolidation or change of boundaries is located, and shall be filed with the clerk of said board not less than 30 days before the convening of such board in regular session, or in any special session called for the purpose of considering said petition, and *if, before final action thereon, it shall appear to said board or a majority thereof that said petition or the signing thereof does not conform to this act, or contains incorrect statements, no further proceedings pursuant to said petition shall be had, but, if it shall appear that said petition conforms in all respects to the provisions of this act, and that the statements contained therein are true, said board of supervisors shall, by resolution, provide that the question of making the proposed incorporation, consolidation or change of boundaries shall be submitted to the qualified electors of the district to be affected at the next general election,* occurring in not less than 40 days after the adoption of such resolution, and if no general election is to occur within 90 days, said resolution may fix a date preced-

ing said general election for a special election on such question: . . . *After the adoption of such resolution neither the sufficiency nor legality of the petition on which it is based may be questioned in any proceeding.* [Emphasis added.]

The township and the board of commissioners aver that § 8 vests in the board the exclusive and final authority to determine the validity of detachment petitions and to schedule a detachment election. The county executive, Pontiac, and the Harbor Companies refer to MCL 45.561, a section of the act authorizing the adoption of "an optional unified form of county government." MCL 45.551.[14] With respect to a county that adopts the optional unified form of county government designating a county executive, MCL 45.552(1)(b), § 11 of the act invests the county executive with the following authority:

(1) *Except as provided in this section, the county executive may veto an ordinance or resolution adopted by the board, including items of an ordinance appropriating funds.* The veto shall be certified by the county executive to the board of county commissioners within 10 days after date of adoption of the ordinance or resolution and the board may override the veto by a ⅔ vote of all members elected and serving. The county board of commissioners shall override a veto by the second meeting following deliv-

---

[14] According to MCL 45.552(1),

[a]n optional unified form of county government shall include either:

(a) An appointed county manager, who shall comply with the qualifications and exercise the responsibilities detailed in sections 7 and 8. This form of county government shall be known as alternate A.

(b) An elected county executive, who shall comply with the qualifications and exercise the responsibilities detailed in sections 8, 9, 10, and 11. This form of county government shall be known as alternate B.

erance to the county board of commissioners of the message of veto. *The county executive may not approve or disapprove resolutions or motions pertaining to any of the following*:

(a) The organizational structure of the county board of commissioners.

(b) Appointments by the county board of commissioners.

(c) Resolutions concerning the county board of commissioners' policy positions as to pending legislation.

(d) The abolishment of the optional unified form of county government under section 23.

(2) Under the unified form of county government containing alternate B [a county executive], an ordinance or resolution shall become effective on approval of the county executive, on expiration of 10 days, measured in hours and minutes from the time presented to the county executive, without approval or veto, or on the overriding of a veto in the manner above described. [MCL 45.561 (emphasis added).]

The county executive, Pontiac, and the Harbor Companies assert that the executive's veto authority provided within § 11 plainly encompasses detachment resolutions.

B

The clear and unambiguous language of MCL 45.561 inescapably leads to our conclusion that the county executive possessed the authority to veto the board of commissioners' detachment resolution, and thus acted properly in doing so. The Legislature plainly provided that with the exception of the four specifically proscribed limitations enumerated within § 11 itself, the county executive may veto ordinances and resolutions adopted by the board of commissioners. The Legislature's explicit restriction of the county

executive's veto power to only four limited instances clearly signals the Legislature's intent that a county executive otherwise should have broad authority to veto the board's ordinances and resolutions. Similarly, the fact that the Legislature did not include detachment resolutions within its enumeration of the four specific exemptions from the county executive's veto authority plainly reflects the Legislature's intent to forgo any detachment resolution exemption. *Bradley v Saranac Community Schools Bd of Ed*, 455 Mich 285, 298-299; 565 NW2d 650 (1997) (noting that "[t]his Court recognizes the maxim *expressio unius est exclusio alterius*; that the express mention in a statute of one thing implies the exclusion of other similar things"); *Alcona Co v Wolverine Environmental Production, Inc*, 233 Mich App 238, 247; 590 NW2d 586 (1998).

Although the parties have argued at length attempting to characterize the county executive's veto of a detachment resolution of a county board of commissioners as ministerial or not, we find no statutory basis for engaging in this exercise. The veto power the Legislature provided the county executive within MCL 45.561 simply does not distinguish that the executive may exercise his discretion to veto under certain circumstances, but that in different situations the executive either must or must not invoke his veto power. As we stated above, the Legislature plainly granted the executive broad veto power circumscribed only by the four enumerated exceptions within MCL 45.561. These four specific exceptions do not include a "ministerial duty" exception. We will not engage in prohibited judicial legislation by engrafting a further exception for which the Legislature clearly

did not provide. *Pohutski, supra* at 683; *In re Wayne Co Prosecutor*, 232 Mich App 482, 486; 591 NW2d 359 (1998).

We reject the township's suggestion that MCL 117.8 precludes an executive veto in the instant case because it constitutes a section of a more specific act than the conflicting general legislation encompassing MCL 45.561 and that the language of MCL 117.8 places the exclusive and final determination regarding the validity of detachment petitions in the hands of the board of commissioners. We find instructive *Oakland Co Comm'r v Oakland Co Executive*, 98 Mich App 639; 296 NW2d 621 (1980), in which this Court considered the Oakland County Executive's authority to veto certain resolutions adopted by the Oakland County Board of Commissioners. At the time the case arose, MCL 45.561(1) contained no enumerated exceptions to a county executive's veto powers, instead providing that a "county executive may veto any ordinance or resolution adopted by the board. . . ." *Oakland Co Comm'r, supra* at 651. This Court considered and rejected as follows arguments similar to those that the township raises in this case:

> Plaintiffs argue that the resolutions [by the board of commissioners] to withdraw from SEMTA [the Southeastern Michigan Transportation Authority] and to merge the offices of public works and drain commissioners were made pursuant to specific statutory authority granted it by the Legislature [specifically, MCL 124.405(1) and MCL 280.21(3)]. Arguing that 1973 PA 139 [the optional unified form of county government act] represents general legislation, plaintiffs contend that the special legislation under which the resolutions were passed takes precedence over the veto power granted the county executive in the act as exceptions to the general statute which must be given effect to carry out leg-

islative intent. Plaintiffs conclude that where, as here, a general intention is expressed and also a particular intention which is incompatible with the general one, the particular intention shall be considered as an exception to the general one. . . .

While plaintiffs correctly state the general rule of law, we are unable to agree that the rule applies here. We do not find the conflict in legislation alleged by plaintiffs to be present. To the contrary, we find 1973 PA 139 to be completely harmonious with the Metropolitan Transportation Authorities Act of 1967, MCL 124.401 *et seq.*

*The ability of the board of commissioners to vote* in favor of a SEMTA withdrawal, or a public works/drain commissioner merger, *does not conflict with the ultimate veto power of the county executive, nor with the board of commissioners' subsequent ability to override such vetoes.* One represents legislative action; the other executive fiat. The subject matter covered by each does not directly overlap. *Surely, the words "subject to veto" need not have been included by the Legislature as a part of the SEMTA withdrawal and merger enactments. [Oakland Co Comm'r, supra* at 651-652 (emphasis added).]

The circuit court correctly found in its January 11, 2002, opinion and order that no conflict existed between the statute authorizing the board to adopt resolutions verifying detachment petitions and the statute authorizing the county executive to veto resolutions, including detachment resolutions. Consequently, we cannot accept the argument by the township that MCL 117.8 conflicts with MCL 45.561 and must be construed as a specific exception to the veto power that authorizes the board in every case to make decisions regarding detachment petitions immune from and unaffected by an executive veto[15]—

---

[15] We find misplaced the township's heavy reliance on *Raven, Inc v Southfield,* 69 Mich App 696, 702-704; 245 NW2d 370 (1976) (dissenting

especially in light of the clear and unambiguous language within MCL 45.561 authorizing the county executive's veto in a broad variety of circumstances limited only by the four enumerated exceptions that make no mention of detachment resolutions.[16]

opinion by DANHOF, C.J.), rev'd 399 Mich 853 (1977) (adopting the reasoning within the dissenting opinion by DANHOF, C.J.). *Raven* involved the validity of the Southfield mayor's veto of a city council resolution approving the plaintiff's liquor license. 69 Mich App 697. The circuit court granted the plaintiff summary disposition, apparently finding that the mayor's attempted veto constituted a nullity. *Id.* at 698. This Court reversed, however, on the basis that the mayor, who possessed the authority to veto council resolutions pursuant to the city charter, constituted a part of the " 'local legislative body' " entitled to approve liquor licenses pursuant to MCL 436.17. 69 Mich App 701-702. In the dissenting opinion adopted by the Supreme Court, Chief Judge DANHOF reasoned that MCL 436.17 plainly provided for the approval of liquor license applications by only the local *legislative* body, which did not include the mayor. 69 Mich App 703-704. Chief Judge DANHOF concluded that the mayor's city-charter-based authority to veto council resolutions did not apply in light of the plain language of MCL 436.17, which contemplated no role for the mayor in liquor license application approval. 69 Mich App 704.

Quite unlike the instant case, however, *Raven* did not involve a broad, *statutorily authorized* veto by a county executive. The circuit court also properly distinguished the several cases the township cited in support of its argument regarding the board's exclusive and final authority to determine the validity of detachment resolutions. These cases cited by the township likewise did not contemplate the statutorily authorized county executive veto authority within MCL 45.561.

[16] In *Oakland Co Comm'r, supra* at 653, this Court further addressed the plaintiffs' "contention that the veto power was intended to be exercisable only as to matters dealing with the optional unified form of county government . . . ." This Court rejected the plaintiffs' suggestion because MCL 45.561 "plainly and unambiguously refers to *any* action of the board of commissioners as a proper subject for exercise of veto power. No judicial construction to the contrary is possible." *Oakland Co Comm'r, supra* at 653 (emphasis in original). Although the Legislature since has enacted exceptions to the executive's veto authority, these exceptions are specific and exclusive and do not purport to limit the executive's veto authority only to matters dealing with the optional unified form of county government. In light of this Court's previous holding regarding the broad nature of the executive's veto authority and the Legislature's subsequent limitation of that authority only in limited respects, we reject the suggestion by the board that the executive's veto power applies only to resolutions

The township and the board of commissioners rely on the final sentence of MCL 117.8, which sets forth that "[a]fter the adoption of such resolution neither the sufficiency nor legality of the petition on which it is based may be questioned in any proceeding," in support of their contention that the board of commissioners must have the last word with respect to the validity of detachment petitions. For several reasons we find this contention unpersuasive. First, the Legislature presumably was aware of the role played by the board of commissioners with respect to the processing of detachment petitions pursuant to MCL 117.8, but nonetheless subsequently granted the county executive the broad authority to veto resolutions by the board without excepting detachment resolutions. See *Malcolm v East Detroit,* 437 Mich 132, 139; 468 NW2d 479 (1991) (noting the "well-tested principle of construction that the Legislature is held to be aware of the existence of the law in effect at the time of its enactments"). The Legislature not only failed to include a detachment resolution exception when it initially enacted MCL 45.561, but it also declined to incorporate a detachment resolution exception when it later amended MCL 45.561 to include the four limited exceptions that it currently possesses.

Second, in response to the township's suggestion that the Legislature did not include a detachment exception within MCL 45.561 because it knew that the last sentence of MCL 117.8 already precluded a county executive veto of a detachment resolution, we

---

involving the board's passage of legislation or action with respect to the operation of county government.

remain unconvinced that the Legislature's use of the word "proceeding" within the ultimate sentence of MCL 117.8 is intended to apply to a county executive's veto. According to Black's Law Dictionary (7th ed), the term "proceeding" refers to "[t]he regular and orderly progression of a *lawsuit*, including all acts and events between the time of commencement and the entry of judgment," or "[a]ny procedural means for seeking redress from a tribunal or agency." [Emphasis added.] While one of the further, more general meanings of "proceeding" includes "[a]n act or step that is part of a larger action," *id.*, we note that in considering the meaning of the last sentence within MCL 117.8 the Michigan Supreme Court has observed that "[a]pparently the provision that such resolution shall not thereafter be questioned was intended to prevent undue delay resulting from *litigation.*" *French v Ingham Co*, 342 Mich 690, 698; 71 NW2d 244 (1955) (emphasis added). Third, even were we to accept an all-encompassing definition of "proceeding" within MCL 117.8, we would find that the last sentence of § 8 did not apply to this case because the detachment resolution technically had not been adopted in light of the county executive's veto and the board's subsequent failure to override the veto. MCL 45.561(2); *Livonia Drive-In Theatre Co v Livonia*, 363 Mich 438, 445; 109 NW2d 837 (1961) (observing that "no valid resolution" existed after "the exercise of the veto power by the mayor, and the failure of the common council to override such action").

We lastly note regarding the issue of the county executive's veto authority that we fail to detect any "absurdity" resulting from our enforcement of the

plain and unambiguous legislative vesting of a broad veto power in the county executive within the optional unified county form of government act, as chosen by the voters of Oakland County. *Oakland Co Comm'r, supra* at 647 ("Oakland County adopted this [county executive] form of government pursuant to the strictures found in MCL 45.553 . . . through initial adoption thereof by the board of commissioners and subsequent approval by the voters.").

We conclude that the circuit court erroneously imposed a ministerial duty exception on the county executive's veto authority. Because the executive properly invoked his broad discretion pursuant to MCL 45.561 to veto the board's detachment resolution, and because the board failed to override the county executive's veto, we further conclude that the board's detachment resolution had no effect, MCL 45.561(2); *Livonia Drive-In Theatre, supra,* and could not form the basis for scheduling a detachment election pursuant to MCL 117.8.

IV

Our conclusion that the county executive had authority to veto the board of commissioners' detachment resolution, and the resultant fact that the county executive's veto of the December 13, 2001, detachment resolution of the board precluded the occurrence of the scheduled detachment election, render unnecessary our disposition of the various secondary issues raised by the parties.[17] Although the township's

---

[17] We nonetheless note our belief that the township's financial stake in the detachment election and its need for guidance with respect to its elec-

briefs on appeal decry its perception that the county executive "single-handedly usurp[ed] the rights of approximately 77,000 Pontiac and Bloomfield electors," we find this characterization inaccurate. In this case, the voters of the township and Pontiac had no right to vote in the detachment election because the executive vetoed the detachment resolution pursuant to a clear investment of authority by the Legislature, which itself is elected by Michigan voters. Furthermore, the county executive acted in his capacity as an official ' elected by the voting citizens of Oakland County, MCL 45.559, who also voted to select the optional county executive form of government with its accompanying executive veto authority. *Oakland Co Comm'r, supra* at 647. Accordingly, this case reflects the proper functioning of the form of county government specifically chosen by the county's voters, who have recourse to the voting booth should they feel inclined to express dissatisfaction with the county executive's veto.

---

tion obligations constituted an adequate basis for its standing in this case. *Lee v Macomb Co Bd of Comm'rs*, 464 Mich 726, 739-740; 629 NW2d 900 (2001). We also note that we need not address the county executive's arguments regarding the propriety of his dismissal from the case because the executive ignores the basis for the circuit court's decision to order his appearance. *Joerger v Gordon Food Service, Inc*, 224 Mich App 167, 175; 568 NW2d 365 (1997). The executive addresses alleged defects in the township's motion to add him as a party defendant, ignoring that the circuit court sua sponte ordered the executive's appearance "as a courtesy." Moreover, we note that the circuit court never ruled on the motion to dismiss filed by the executive. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999). We further note that the circuit court properly declined to transfer the instant detachment action to the circuit judge entertaining cases involving the prior annexation of the property because the cases arose from different transactions or occurrences. MCR 8.111(D)(1); *Ross v Onyx Oil & Gas Corp*, 128 Mich App 660, 668-669; 341 NW2d 783 (1983).

We reverse the circuit court's January 29, 2002, declaratory judgment order and remand this case for further proceedings consistent with this opinion. We do not retain jurisdiction.