*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JUAN CARLOS MUNIZ,

Defendant-Appellant.

FOR PUBLICATION
September 22, 2022
9:20 a.m.

No. 355977
Allegan Circuit Court
LC No. 18-021853-FC

Before: MURRAY, P.J., and O'BRIEN and REDFORD, JJ.

REDFORD, J.

Defendant appeals as of right his conviction by a jury of first-degree criminal sexual conduct (CSC-I), MCL 750.520b. The trial court sentenced him as a second-offense habitual offender, MCL 769.10, to 15 to 25 years' imprisonment with credit for 207 days served. We affirm.

## I. BACKGROUND

At trial, the complainant, defendant's younger cousin, testified that defendant sexually abused her at family gatherings when she was aged 4, 7, and 13 years old. The complainant reported the incidents to her parents when 14 years old but they did not report the incidents to the authorities because they did not wish to cause a conflict in the family. Later, the complainant told her friend about the incidents who informed a school counselor which led to investigation by Child Protective Services and the police.

On appeal, defendant argues that his trial counsel provided ineffective assistance by failing to object to the testimony of two expert witnesses, Thomas Cottrell and Dr. Debra Simms, who he argues improperly bolstered the complainant's testimony. Defendant also argues that sentencing guidelines Offense Variables (OV) 13 and 19 were errantly scored, that MCL 768.27a is unconstitutional, and that propensity evidence admitted under that statute invalidated the results below. For the reasons stated in this opinion, we affirm defendant's conviction and sentence.

-1-

## II. STANDARDS OF REVIEW

We review de novo the constitutional question whether an attorney provided ineffective assistance depriving a defendant of the right to counsel. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008). We review for an abuse of discretion a trial court's decision to grant or deny a new trial. *People v Terrell*, 289 Mich App 553, 559; 797 NW2d 684 (2010). A trial court's decision on an evidentiary issue will be reversed on appeal only when there has been a clear abuse of discretion. *People v Holtzman*, 234 Mich App 166, 190; 593 NW2d 617 (1999). A trial court does not abuse its discretion when it chooses an outcome within the range of reasonable and principled outcomes. *People v Babcock*, 469 Mich 247, 269; 666 NW2d 231 (2003).

## III. ANALYSIS

## A. EXPERT TESTIMONY

## 1. COTTRELL

Defendant argues that his trial counsel provided ineffective assistance by failing to object to the testimony of licensed social worker and child sexual abuse therapist, Thomas Cottrell, who the trial court qualified as an expert in child sexual-abuse victim behavior, and testified generally about the reasons for sexual-assault victims' delayed, or gradual, disclosure of abuse, as well as factors related to victims' recollections of abuse, and recanting reports of abuse. Cottrell also offered general information regarding victim selection, and victim behaviors. At the postconviction hearing on defendant's motion for a new trial or an evidentiary hearing, defendant argued that defense counsel should have moved to exclude Cottrell's testimony on the grounds that it lacked reliability, as demonstrated by an affidavit submitted by defendant's expert, and that it improperly bolstered the complainant's credibility. The trial court complimented defense counsel's vigorous advocacy, but stated that Cottrell did not improperly bolster the complainant's testimony because the "expert witness" did not "respond[] to questions regarding credibility based on research, personal experience, practice, expert knowledge." The trial court further concluded that an objection to Cottrell's qualifications to provide reliable testimony would have been "a pleading without merit with this Court."

## a. ADMISSIBILITY

MRE 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

MRE 702 incorporates the standards of reliability established in *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 781; 685 NW2d 391 (2004). "[T]he court may admit evidence only once it ensures, pursuant to MRE 702, that expert testimony meets that rule's standard of reliability." *Id*. at 782. "The trial court thus acts as a gatekeeper for expert testimony and has a fundamental duty to ensure that the proffered expert testimony is both relevant and reliable." *People v Bynum*, 496 Mich 610, 624; 852 NW2d 570 (2014). A trial court must make a searching inquiry to determine whether to admit expert testimony. *Gilbert*, 470 Mich at 782. The preliminary determination of the qualification of an expert is for the trial court. *Id.* at 780.

Defendant argues that Cottrell's testimony lacked reliability because it appeared to be based on his training and experience treating victims, rather than academic studies. Michigan courts regularly admit expert testimony concerning typical and relevant symptoms of abuse, such as delayed reporting and secrecy. *People v Peterson*, 450 Mich 349, 373; 537 NW2d 857 (1995) (holding that the prosecution may present relevant and helpful evidence to generally explain the common postincident behavior of child victims of sexual abuse). As to Cottrell not specifically citing the academic journals or other sources on which a child sex abuse expert witness relied, our Supreme Court long has recognized that "[t]here has developed a body of knowledge and experience about the symptomatology of child abuse victimization," *People v Beckley*, 434 Mich 691, 733; 456 NW2d 391 (1990), that "serves only to define the broad range of possible physical, psychological, and emotional reactions that a child victim could potentially experience." *Id*. at 722. Our Supreme Court explained that "the purpose of allowing expert testimony in these kinds of cases is to give the jury a framework of possible alternatives for the behaviors," and "to provide sufficient background information about each individual behavior at issue which will help the jury to dispel any popular misconception commonly associated with the demonstrated reaction." *Id*. at 726.

" 'Under MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible.' " *Elher v Misra*, 499 Mich 11, 23; 878 NW2d 790 (2016), quoting *Edry v Adelman*, 486 Mich 634, 642; 786 NW2d 567 (2010). However, in addition to his work in treating over 300 victims of abuse, Cottrell testified regarding his training, continuing education through conferences and training sessions, and research, all sources of his knowledge. A witness may be qualified "as an expert by knowledge, skill, experience, training, or education." MRE 702. In this case, Cottrell discussed each of these areas as the foundation of his knowledge.

Defendant does not dispute Cottrell's qualifications, but argues that his testimony was not scientifically valid and thus could not assist the jury in understanding victim behavior. A trial court must consider several factors to determine "whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue." *Daubert*, 509 US at 592-593. The expert's opinion must be shown to be reliable, including the data underlying the expert's theories and the methodology by which the expert draws his or her conclusions. *People v Yost*, 278 Mich App 341, 394; 749 NW2d 753 (2008).

After his trial in his motion for a new trial, defendant submitted an affidavit of a psychologist that stated that there was "no scientific consensus, let alone empirical research, to

support" many of Cottrell's statements. The affidavit further asserted that research in the area had some deficits, and did not fully support Cottrell's assertions regarding delayed disclosure of abuse, victims' fears about being believed or separated from their families, victims' memories, and victims' recantations. Although defendant's affiant may disagree with several of Cottrell's assertions, his affidavit does not establish that the totality of Cottrell's testimony lacked reliability or admissibility. Cottrell defined the parameters of his knowledge base, which were adequate to qualify him. Defense counsel had opportunity to thoroughly cross-examine Cottrell and challenge any of his testimony but did not interrogate Cottrell about research or studies that either supported or contradicted his opinions. Defendant failed to establish any ground for doubting Cottrell's reliability.

"It has also long been recognized that the behavior of victims of varying kinds of trauma often appears irrational and confusing to most people; and expert testimony is admissible and appropriate to explain that behavior with no need to engage in an analysis of scientific reliability." *People v Spaulding*, 332 Mich App 638, 659; 957 NW2d 843 (2020); see also *People v Christel*, 449 Mich 578, 590-591; 537 NW2d 194 (1995). In this case, Cottrell's testimony provided a general explanation of sexual-assault victims' behavior following an assault. Cottrell gave testimony regarding a wide range of many aspects of such behavior. His expert testimony properly gave a general explanation of "the common postincident behavior of children who are victims of sexual abuse." *Peterson,* 450 Mich at 373.

b. VOUCHING

Defendant argues further that Cottrell's testimony vouched for the complainant's credibility. An expert may not vouch for the veracity of a victim. *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007). Accordingly, an expert may not engage in "unwarranted reinforcement of the complaining witness's testimony" by giving a "stamp of scientific legitimacy to the truth of the complaining witness's factual testimony" concerning the alleged crime. *People v Izzo*, 90 Mich App 727, 730; 282 NW2d 10 (1979). An expert may not testify that a specific victim's allegations are truthful or that abuse in fact occurred. *People v Garrison (On Remand)*, 187 Mich App 657, 658; 468 NW2d 321 (1991). Sexual-abuse "syndrome evidence is not admissible to demonstrate that abuse occurred and . . . an expert may not give an opinion whether the complainant is being truthful." *Peterson*, 450 Mich at 369.

Defendant argues that Cottrell's testimony "showed the jury that [the complainant's] behavior was consistent with an actual abuse victim," and that "Cottrell's customized profile of an actual victim was neatly tailored" to the complainant's testimony. An expert is not permitted to testify "that the particular child victim's behavior is consistent with that of a sexually abused child" because such information "comes too close to testifying that the particular child is a victim of sexual abuse." *Peterson*, 450 Mich at 373-374. In this case, defendant argues that Cottrell's testimony was so consistent with the complainant's testimony that it amounted to vouching.

The record, however, indicates that Cottrell never compared his general information about the behavior of abuse victims with specific behavior of the complainant. The record reflects that, in fact, the prosecution avoided eliciting any testimony as to the validity of the victim's statements. That the general information about abuse victim's conduct about which Cottrell testified happened to be consistent with the complainant's postincident behavior does not constitute vouching.

-4-

Cottrell testified regarding general conduct of abuse victims based on his 30 years of experience in counseling numerous abuse victims. Further, Cottrell testified that he had not met the complainant or read the police report or forensic interview, and explained that the prosecutor had provided only a brief description of the case over the phone. Cottrell made no references to the victim's allegations, her disclosure of information, or any other aspects of this case. Defendant's trial counsel attempted to ask Cottrell whether his work involved assessing the credibility of abuse victims, but the trial court promptly intervened before Cottrell could respond, and at no time during his testimony did Cottrell offer any opinion or statement that could be reasonably understood as vouching for the complainant in this case. Moreover, during cross-examination, Cottrell admitted that a victim's late disclosure, recanting allegations, and demeanor while testifying did not necessarily mean that an allegation was truthful. In fact, Cottrell's testimony on cross-examination served the opposite of vouching. When asked if he was "testifying . . . as to whether or not what happened in this case actually happened" he answered that he "could not." For these reasons, Cottrell's testimony did not vouch for the credibility of the complainant.

## c. INEFFECTIVE ASSISTANCE

A defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This "right to counsel encompasses the right to the effective assistance of counsel." *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). The "effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Rodgers*, 248 Mich App 702, 714; 645 NW2d 294 (2001). To prevail on a claim of ineffective assistance of counsel, a defendant must show that "counsel's performance was deficient," and that the "deficient performance prejudiced the defense." *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007) (quotation marks and citation omitted). Defense counsel's performance is deficient if "it fell below an objective standard of professional reasonableness." *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but for counsel's errors, "the result of the proceeding would have been different." *Id*. Accordingly, "defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012) (citations omitted).

Defendant asserts that his trial counsel had no strategic reason for not objecting to Cottrell's testimony. The trial court, however, suggested that defense counsel's strategy was to challenge the limits of Cottrell's testimony, rather than offering a meritless objection. Regardless of the success of this strategy, defense counsel chose to characterize Cottrell's testimony as inapplicable to the facts of this particular case. As the trial court noted, an objection to Cottrell's qualifications as an expert would have been futile. Moreover, as explained previously, Cottrell offered admissible expert testimony and he did not vouch for the complainant but stayed clear of testifying to inadmissible opinions. Accordingly, had defense counsel objected, such objections would have been futile. Counsel is not ineffective for declining to raise a futile objection. See *In re Archer*, 277 Mich App 71, 84; 744 NW2d 1 (2007). Defendant's claim of ineffective assistance, therefore, fails.

## 2. DR. SIMMS

Defendant also argues that his trial counsel provided ineffective assistance by failing to object to Dr. Debra Simms's testimony about the treatment she prescribed for the complainant, on the ground that Dr. Simms thus vouched for the complainant's credibility.

The trial court qualified Dr. Simms as an expert in "child sexual assault examination." She testified that "the purpose of this evaluation [of the complainant] was to take a history and to do an examination and an evaluation for possible pediatric sexual abuse." Dr. Simms testified that the complainant disclosed to her that she had been sexually abused by defendant until age 14, and explained that "any time that you have the potential for body fluid contact . . . there's the potential for sexually transmitted infections. So, she was tested for gonorrhea, chlamydia, and trichomonas . . . and . . . also for HIV, syphilis, and Hepatitis C." Regarding Dr. Simms, the trial court reasoned that "[t]here was not a diagnosis of pediatric sexual abuse by Dr. Simms," but rather "referrals for treatment and counseling and for testing."

## a. VOUCHING

Defendant argues that this case is "a near carbon copy of *Thorpe*." In *People v Thorpe*, 504 Mich 230, 261-262; 934 NW2d 693 (2019), a case presided over by the same trial judge, our Supreme Court held that the trial court plainly erred by permitting Dr. Simms to testify that a victim suffered "probable pediatric sexual abuse" based on the victim's account of the assault, when no physical evidence corroborated such testimony. The Court reiterated that "an examining physician cannot give an opinion on whether a complainant had been sexually assaulted if the 'conclusion [is] nothing more than the doctor's opinion that the victim had told the truth.' " *Id*. at 262, quoting *People v Smith*, 525 Mich 98, 109; 387 NW2d 814 (1986).

Defendant argues that Dr. Simms's testimony that she referred the complainant for tests for sexually transmitted diseases implied that Dr. Simms thought it likely that there had been a sexual assault, and thus, vouched for the complainant's testimony. Dr. Simms, however, explained that she ordered tests for possible sexually transmitted diseases in response to the mere "potential for body fluid contact," resulting in "the potential for sexually transmitted infections." Dr. Simms ordered the tests out of caution regarding possible infection, rather than out of the belief that the complainant had been sexually abused. Dr. Simms stated that the complainant was referred because of "possible pediatric sexual abuse." In this case, Dr. Simms did not diagnose the complainant as a probable or actual victim of pediatric sexual abuse.

In *Thorpe*, Dr. Simms offered improper opinion testimony that she diagnosed the child in that case with "probable pediatric sexual abuse" based solely on the victim's statement. *Thorpe*, 504 Mich 245-248. Our Supreme Court held that such testimony prejudiced the defendant by clearly improperly vouching for the accuser's credibility. *Id*. at 263-264. In this case, by contrast, Dr. Simms did not provide any diagnosis, gave no opinion regarding the complainant's statements, and testified that she directed follow-up care for testing for sexually transmitted disease infection from contact with bodily fluids. Dr. Simms gave no testimony respecting whether the complainant had been sexually abused. For these reasons, we conclude that Dr. Simms's did not vouch for the credibility of the complainant.

## b. INEFFECTIVE ASSISTANCE

Defendant argues that his trial counsel provided ineffective assistance by failing to object to Dr. Simms's testimony. However, the matter had been well vetted prior to trial. At a motion hearing to decide the scope of Dr. Simms's testimony, defendant argued that Dr. Simms should not testify because no admissible evidence existed that the complainant had physical injuries, and therefore, Dr. Simms could not properly testify that the complainant was sexually abused. The trial court agreed and ruled that Dr. Simms "cannot testify to a diagnosis of . . . pediatric sexual abuse regardless of what she may testify that there has been these things that she found in her medical exam." Defense counsel, therefore, reasonably refrained from positing a meritless objection after having established the limited bounds of Dr. Simms's testimony. The record indicates that the parties avoided eliciting from Dr. Simms any testimony that she had "diagnosed" the complainant as having been sexually abused. Trial counsel is not ineffective for declining to raise a futile objection. *In re Archer*, 277 Mich App at 84.

## B. OFFENSE VARIABLES

Defendant alternatively challenges his minimum sentence on the ground that the trial court relied on a guidelines range infected by two scoring errors. We disagree.

We review the trial court's factual determinations at sentencing for clear error. *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*. See also *People v Calloway*, 500 Mich 180, 184; 895 NW2d 165 (2017).

"A defendant is entitled to be sentenced by a trial court on the basis of accurate information." *People v Francisco*, 474 Mich 82, 88; 711 NW2d 44 (2006). A trial court relies on inaccurate information when it sentences a defendant by consulting an inaccurate guidelines range. See *id*. at 89 n 7. The court must score and consider the sentencing guidelines and assess the highest amount of points properly applicable for each offense variable. *People v Lockridge*, 498 Mich 358, 392 n 28; 870 NW2d 502 (2015). The appropriate offense variables are generally assessed on the basis of the sentencing offense. *People v Sargent*, 481 Mich 346, 348; 750 NW2d 161 (2008). "A sentencing court has discretion in determining the number of points to be scored, provided that evidence of record adequately supports a particular score." *People v Dickinson*, 321 Mich App 1, 21; 909 NW2d 24 (2017). The trial court's factual determinations regarding offense variables must be supported by a preponderance of the evidence. *People v Osantowski*, 481 Mich 103, 111; 748 NW2d 799 (2008). "The trial court may rely on reasonable inferences arising from the record evidence to sustain the scoring of an offense variable." *People v Earl*, 297 Mich App 104, 109; 822 NW2d 271 (2012).

## 1. OFFENSE VARIABLE 13

The trial court assessed 10 points for OV 13, MCL 777.43(1)(d), which concerns a continuing pattern of criminal behavior when "[t]he offense was part of a pattern of felonious criminal activity involving a combination of 3 or more crimes against a person or property . . . ."

The crimes considered in assessing OV 13 include "all crimes within a 5-year period, including the sentencing offense, . . . regardless of whether the offense resulted in a conviction." MCL 777.43(2)(a).

"A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Johnson*, 298 Mich App 128, 131; 826 NW2d 170, 172 (2012). According to the presentence investigation report (PSIR), defendant committed the sentencing offense in December 2016, had been convicted of felony breaking and entering twice in December 2014, and convicted of the felony of attempted unlawful driving away of an automobile in June 2014. Therefore, the prerequisite three prior felony convictions, including the sentencing offense, within five years of the sentencing offense, are matters of record requiring assessment of 10 points for OV 13.

Defendant concedes that he was convicted of four felonies since 2014, thus within five years of the sentencing offense, but argues that they established no "pattern of felonious activity" because the earlier convictions were for crimes against property, as opposed to the instant crime against a person. The plain language of MCL 777.43(1)(d), however, specifies assessment of points for "felonious criminal activity" consisting of "crimes against a person or property". Defendant's argument, therefore, lacks merit.

## 2. OFFENSE VARIABLE 19

Defendant argues that the trial court erred by assessing 10 points for OV 19. MCL 777.49(c) requires assessment of points if "[t]he offender . . . interfered with or attempted to interfere with the administration of justice." Defendant claims that no evidence established that he interfered with the administration of justice.

The factors considered for OV 19 include events that almost always occur after the charged offense has been completed. *People v Smith*, 488 Mich 193, 200; 793 NW2d 666 (2010). Interfering, or attempting to interfere, with the administration of justice includes acts that constitute obstruction of justice, but is not limited to such acts. *People v Ericksen*, 288 Mich App 192, 204; 793 NW2d 120 (2010).

At the sentencing hearing the trial court reasoned that 10 points must be assessed for OV 19 because defendant had not only denied the complainant's allegations to the police, but he "deflected" the police by telling them that he "really did not go over to [the complainant's] house and she rarely came to their's," that the complainant was prescribed psychotropic medications that "were really bad for her," and that the complainant had recanted allegations she made against her grandfather. According to the PSIR, defendant also told the police that he did not "remember anything" with the complainant, including any sleepovers with her because she had head lice and was not permitted to stay over, or that he lived in a different city.

Defendant does not dispute the trial court's statements or the information in the PSIR, but he argues that OV 19 may not be assessed for a defendant's denial of the allegations underlying a conviction. Defendants have an absolute right to maintain their innocence, and a trial court may

not base any part of a defendant's sentence on a refusal to admit guilt. *People v Pennington*, 323 Mich App 452, 467; 917 NW2d 720 (2018). However, "interfering with a police officer's attempt to investigate a crime constitutes interference with the administration of justice." *People v Passage*, 277 Mich App 175, 180; 743 NW2d 746 (2007). Assessment of points for OV 19 is appropriate for "conduct that constitutes an attempt to avoid being caught and held accountable for the sentencing offense." *People v Sours*, 315 Mich App 346, 349; 890 NW2d 401 (2016). In *Ericksen*, 288 Mich App at 204, this Court recognized "fabrications that were self-serving attempts at deception obviously aimed at leading police investigators astray" as interference with the administration of justice. Because "[l]aw enforcement officers are an integral component in the administration of justice," providing them with false information is interference with the administration of justice. *People v Barbee*, 470 Mich 283, 288; 681 NW2d 348 (2004).

In this case, defendant made statements plainly intended to deceive law enforcement during the investigation. Defendant attempted to direct responsibility for the allegations onto the complainant, attributing them to her therapeutic medications, and he insinuated that she was falsely accused him as she had done against another person. Defendant's statements that he could not have physically touched the complainant because they had not been in the same location went beyond denying the allegations by misleading the police about his ability to physically commit the crimes. We conclude that a preponderance of the evidence supported the trial court's assessment of 10 points for OV 19.

## C. CONSTITUTIONALITY OF MCL 768.27a

We review de novo constitutional claims. *People v Abraham*, 256 Mich App 265, 272, 662 NW2d 836 (2003). However, unpreserved claims are reviewed for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). In *Carines*, our Supreme Court explained:

> To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings. It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. Finally, once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence. [*Id*. at 763-764 (quotation marks, alteration, and citations omitted).]

MCL 768.27a(1) provides in relevant part that "in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant." Accordingly, " '[i]n cases involving the sexual abuse of minors, MCL 768.27a now allows the admission of other-acts evidence to demonstrate the likelihood of a defendant's criminal sexual behavior toward other minors.' " *People v Buie*, 298 Mich App 50,

71-72; 825 NW2d 361 (2012), quoting *People v Pattison*, 276 Mich App 613, 620; 741 NW2d 558 (2007). The Legislature enacted MCL 768.27a to "address a substantive concern about the protection of children and the prosecution of persons who perpetrate certain enumerated crimes against children and are more likely than others to reoffend." *People v Watkins,* 491 Mich 450, 476; 818 NW2d 296 (2012).

1. SEPARATION OF POWERS

Defendant argues that MCL 768.27a is an unconstitutional violation of the separation-of-powers doctrine because by it the Legislature has permitted the admission of evidence that our Supreme Court's rule of evidence, MRE 404(b), prohibits. Defendant contends that MCL 768.27a inappropriately allowed the complainant to testify about multiple past acts of sexual abuse by defendant contrary to MRE 404(b). Our Supreme Court in *Watkins*, 491 Mich at 475-477, and this Court in *Pattison*, 276 Mich App at 613, have both rejected the same argument.

In *People v Cameron*, 319 Mich App 215, 232-233; 900 NW2d 658 (2017), this Court explained:

> Const 1963, art 3, § 2 states that "[t]he powers of government are divided into three branches: legislative, executive and judicial. No person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution." As our Supreme Court has explained, however, the separation-of-powers doctrine does not require an absolute separation of the branches of government:
>
> > While the Constitution provides for three separate branches of government, the boundaries between these branches need not be airtight. In fact, in designing the structure of our Government and dividing and allocating the sovereign power among three co-equal branches, the Framers of the Constitution sought to provide a comprehensive system, but the separate powers were not intended to operate with absolute independence. The true meaning [of the separation-of-powers doctrine] is that the whole power of one of these departments should not be exercised by the same hands which possess the whole power of either of the other departments; and that such exercise of the whole would subvert the principles of a free Constitution. [*Makowski v Governor*, 495 Mich 465, 482; 852 NW2d 61 (2014) (quotation marks and citations omitted; alteration in original).]
>
> "If the grant of authority to one branch is limited and specific and does not create encroachment or aggrandizement of one branch at the expense of the other, a sharing of power may be constitutionally permissible." *Hopkins v Parole Bd*, 237 Mich App 629, 636; 604 NW2d 686 (1999).

This Court has held that MCL 768.27a is "a substantive rule of evidence because it does not principally regulate the operation or administration of the courts," so "does not violate the

-10-

principles of separation of powers." *Pattison*, 276 Mich App at 619. Similarly, our Supreme Court held that MCL 768.27a does not violate the separation of powers because it was enacted "not to further the orderly dispatch of judicial business, but to address a substantive concern about the protection of children and the prosecution of persons who perpetrate certain enumerated crimes against children and are more likely than others to reoffend." *Watkins*, 491 Mich at 476.

MCL 768.27a, therefore, does not infringe on the Supreme Court's exclusive rulemaking authority with respect to matters of practice and procedure for the administration of the state's courts. See Const 1963, art 6, § 5. Accordingly, defendant is not entitled to relief because *Watkins* binds this Court as superior authority, see *People v Armisted*, 295 Mich App 32, 53; 811 NW2d 47 (2011), and because this Court must adhere to *Pattison*'s analysis, see MCR 7.215(C)(2) and MCR 7.215(J)(1).

## 2. PROPENSITY EVIDENCE

Defendant also argues that evidence admitted under MCL 768.27a improperly allows character evidence to demonstrate a propensity to commit crimes, and asserts that MCL 768.27a does not change the requirement of MRE 404(b) that evidence not be allowed for the purpose of showing a defendant's propensity to commit crimes.[1] *Pattison* addresses this point:

> [O]ur cases have never suggested that a defendant's criminal history and propensity for committing a particular type of crime is irrelevant to a similar charge. On the contrary, it is because of the human instinct to focus exclusively on the relevance of such evidence that the judiciary has traditionally limited its presentation to juries. In cases involving the sexual abuse of minors, MCL 768.27a now allows the admission of other-acts evidence to demonstrate the likelihood of a defendant's criminal sexual behavior toward other minors. [*Pattison*, 276 Mich App at 620.]

MRE 404(b) and MCL 768.27a do conflict because MRE 404(b) prohibits the admission of a defendant's other bad acts as character evidence to prove the defendant's mere propensity to commit the charged crime. However, because MCL 768.27a is a legislated rule of evidence based on public policy, rather than a purely procedural rule, it is an exception to, and to that extent supersedes, MRE 404(b). *Watkins*, 491 Mich at 474; *People v Smith*, 282 Mich App 191, 204; 772 NW2d 428 (2009). When the Legislature enacts substantive law in furtherance of public policy,

---

[1] MRE 404(b)(1) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

other than court administration, that contravenes a particular court rule, the court rule should yield. *McDougall v Sanchez*, 461 Mich 15, 30-31; 597 NW2d 148 (1999).

### 3. DUE PROCESS

Defendant also argues that allowing the testimony of the complainant to include his alleged past acts of sexual abuse against her violated his due-process right to a fair trial because the "other acts" testimony served as evidence of defendant's propensity to commit the crime charged, and allowed the jury to convict him on that basis. Although MCL 768.27a allows the jury to consider other acts of CSC as evidence of a defendant's character and propensity to commit CSC, it does not lower the quantum of proof or probative value of the evidence that the prosecution must present for conviction of the crime charged. *Pattison*, 276 Mich App at 619; *People v Schultz*, 278 Mich App 776, 778-779; 754 NW2d 925 (2008). For these reasons, it was not fundamentally unfair to allow the complainant to testify about defendant's other acts of CSC against her.

Affirmed.

/s/ James Robert Redford
/s/ Christopher M. Murray
/s/ Colleen A. O'Brien