# Syllabus

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

*In re* PAROLE OF McBRAYER

Docket No. 164311. Argued on application for leave to appeal May 10, 2023. Decided July 24, 2023.

The Macomb County Prosecutor applied in the Macomb Circuit Court for leave to appeal the Parole Board's grant of parole to Richard A. McBrayer, a prisoner under the jurisdiction of the Department of Corrections. The Parole Board intervened. In 1994, McBrayer pleaded guilty of two counts of first-degree criminal sexual conduct, MCL 750.520b(1)(b), involving his stepdaughter when she was 12 to 14 years old. He was sentenced to concurrent terms of 20 to 40 years in prison; the minimum sentences represented the top of the then-controlling judicial sentencing guidelines range. McBrayer became eligible for parole in January 2010 after accumulating disciplinary credits through the years. In 2011, 2015, and 2018, the Parole Board granted McBrayer parole, but the board's grant of parole was overturned each time after the victim, or the prosecutor, appealed. In 2020, the board again considered McBrayer for, and granted him, parole. McBrayer's parole-guidelines score of +11, indicated a high probability of parole, and the board found facts to support the grant. The prosecutor appealed the board's decision in the circuit court. After reviewing the evidence in the record, the court, James M. Biernat, Jr., J., reversed the board's grant of parole, reasoning that there had been no improvement in McBrayer's circumstances from the time he was last considered for parole. McBrayer and the Parole Board both sought leave to appeal in the Court of Appeals, which granted the applications and consolidated the appeals. In a split unpublished per curiam opinion issued on March 10, 2022, the Court of Appeals, CAMERON and RICK, JJ. (JANSEN, P.J. dissenting), affirmed the circuit court's ruling, reasoning that there were substantial and compelling reasons to depart from the parole guidelines—namely, the heinous nature of the crimes, the impact of the crimes on the victim, skepticism about McBrayer's rehabilitation, and concerns with the efficacy of his parole plans. McBrayer sought leave to appeal, and the Supreme Court ordered and heard oral argument on whether to grant McBrayer's application or take other action. 510 Mich 947 (2022).

In a unanimous opinion by Justice ZAHRA, the Supreme Court, in lieu of granting leave to appeal, *held*:

The parole guidelines set out factors for determining whether a prisoner warrants parole; the board assesses those factors when calculating the scores for parole-eligible prisoners. The resulting scores fall into three probability-of-parole categories: high, average, or low. Generally,

the Parole Board must grant parole to prisoners who have a high-probability-of-parole guidelines score. MCL 791.233e(6), as enacted by 1992 PA 181—relevant here because McBrayer was convicted before this statute was amended by 2018 PA 339 and 2022 PA 28—provided that the Parole Board may depart from the parole guidelines by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines; a departure under MCL 791.233e(6) shall be for substantial and compelling reasons stated in writing. Given use of the word "may," the board's decision to depart from the guidelines is discretionary. MCL 791.234(11) provides that when the Parole Board grants parole to a prisoner, the prosecutor of the county from which the prisoner was committed or the victim of the crime for which the prisoner was convicted may appeal the board's decision to the circuit court in the county from which the prisoner was committed, by leave of the court. Under MCR 7.118(H)(3)(a) and (b), an appellant has the burden of establishing that the Parole Board's decision was a clear abuse of discretion or that the decision violated the Michigan Constitution, a statute, an administrative rule, or a written agency regulation. If a party then appeals that decision by leave in the Court of Appeals, the same abuse-of-discretion review standard applies. The Parole Board's judgment, not that of the circuit court, is entitled to deference in that appeal. Even when there are substantial and compelling reasons to deny parole, a grant of parole is not an automatic abuse of discretion. Thus, the mere existence of substantial and compelling reasons for departure is not sufficient for a reviewing court to conclude that the Parole Board abused its discretion by choosing not to depart from the guidelines. Instead, the proper analysis involves two parts. The reviewing court must first consider whether there are substantial and compelling reasons to deny parole to a prisoner with a high-probability guidelines score; if not, no departure is warranted. But if the Parole Board grants parole even though substantial and compelling reasons exist to deny parole, MCR 7.118(H)(3)(b) requires the reviewing court to consider whether the choice not to depart from the high-probability guidelines score constituted an abuse of discretion. The Parole Board abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes. Under that standard, the board's decision is entitled to great deference, and reviewing courts must not substitute their own judgment for that of the board. Although the current version of MCL 791.233e(6)—i.e., as amended by 2018 PA 339 and 2022 PA 28—narrows the Parole Board's ability to depart from the guidelines, it does not alter the deferential review that reviewing courts must give to the board's decisions. In this case, the Court of Appeals' analysis was incomplete in that it only considered whether there were substantial and compelling reasons to depart from the guidelines. It correctly noted that legitimate factors existed that weighed against granting parole, including extensive harm suffered by the victim, skepticism about the extent of McBrayer's rehabilitation, and the adequacy of his parole plan, which placed him locationally near the victim. However, it failed to consider that the Parole Board supported its decision with a significant amount of relevant evidence favorable to McBrayer, including his stated acceptance of responsibility for his crimes and the harm he caused the victim, his expression of remorse, his completion of sex-offender therapy and substance-abuse programming, his 27 years of incarceration with a clean prison record, risk assessments concluding that his statistical risk of reoffending was low, and a parole plan including GPS monitoring and prohibition of entry into the county in which the victim lived. In light of these facts, the board's decision to not depart from the parole-guidelines recommendation to parole McBrayer was not an abuse of discretion. Because the Legislature has assigned discretionary authority to the Parole Board, courts must defer to the board's discretion as long as its conclusions are within the bounds of law. Accordingly, the

Court of Appeals erred by affirming the circuit court's reversal of the Parole Board's decision to parole McBrayer.

Judgments of the Court of Appeals and the circuit court reversed; decision of the Parole Board granting McBrayer parole reinstated.

Justice BOLDEN, concurring, wrote separately to further detail how the facts and procedural history of the case created a difficult test for the courts and the Parole Board. Of particular concern throughout the various proceedings was balancing the victim's safety and well-being with an adequate geographic placement for McBrayer; specifically, McBrayer's parole plan placed him in close proximity to the victim, which neither the victim nor McBrayer wanted. The current plan released McBrayer to the same location placement with the additional requirement that he wear a GPS device that would prohibit his entry into the county in which the victim resided. Justice BOLDEN was troubled by the geographic placement assigned to McBrayer yet agreed with the majority that the Court of Appeals' analysis was flawed; that the Parole Board, on these facts, did not abuse its discretion when it granted McBrayer parole; and that the board's grant of parole should be reinstated.

Justice VIVIANO did not participate in the decision of this case.

# OPINION

Chief Justice:
Elizabeth T. Clement

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

FILED July 24, 2023

S T A T E O F M I C H I G A N

SUPREME COURT

*In re* Parole of RICHARD ALLEN
McBRAYER.

MACOMB COUNTY PROSECUTOR,

       Appellee,

v                           No. 164311

RICHARD ALLEN McBRAYER,

       Appellant,

and

PAROLE BOARD,

       Intervenor.

BEFORE THE ENTIRE BENCH (except VIVIANO, J.)

ZAHRA, J.

In 1994, Richard A. McBrayer pleaded guilty to two counts of first-degree criminal sexual conduct (CSC-I)[1] and was sentenced to concurrent prison terms of 20 to 40 years. The minimum sentences represented the very top of the then-controlling judicial sentencing guidelines range, which was 96 to 240 months. McBrayer became eligible for parole in January 2010. In January 2011, McBrayer's parole-guidelines score indicated a high probability of parole, and the Parole Board granted him parole. The circuit court reversed that order on appeal. The Parole Board twice more granted McBrayer parole, but each time the decision of the board was reversed on appeal. The instant appeal concerns the Parole Board's decision in November 2020 to grant parole to McBrayer for the fourth time. The circuit court reversed the Parole Board's grant of parole, and a split panel of the Court of Appeals affirmed the circuit court's order.[2] The ultimate question before this Court is whether the circuit court and the Court of Appeals impermissibly substituted their judgment for that of the Parole Board when they reversed McBrayer's parole. We hold that they did.

In affirming the circuit court's reversal of the Parole Board's grant of parole, the Court of Appeals majority applied the wrong analysis and ignored the discretion that the Legislature has assigned to the Parole Board. Although the Court of Appeals properly considered whether there were substantial and compelling reasons for departure from the parole guidelines, it failed to separately consider whether the Parole Board's decision not to depart constituted a clear abuse of discretion. Applying the proper analysis, we conclude

---

[1] MCL 750.520b(1)(b).

[2] *In re McBrayer Parole*, unpublished per curiam opinion of the Court of Appeals, issued March 10, 2022 (Docket Nos. 357712 and 357720).

that the Parole Board did not abuse its discretion. We therefore reverse the judgment of the Court of Appeals and reinstate the Parole Board's grant of parole.

## I. BASIC FACTS AND PROCEDURAL HISTORY

For years, McBrayer sexually abused his adolescent stepdaughter. She reported that he raped her daily in the early 1990s when she was between 12 and 14 years old. Sometimes his assaults were particularly violent, inflicting serious physical injuries. The victim has suffered long-term medical problems as well as severe mental and emotional trauma. In January 1994, McBrayer pleaded guilty to two counts of CSC-I. Citing the horrific nature of McBrayer's crimes, the trial judge imposed the maximum available sentence—two concurrent 20- to 40-year prison terms.

Throughout McBrayer's years of incarceration, his only notable misconduct incident was failing to attend a medical appointment in 2001. He steadily accumulated disciplinary credits and became eligible for parole in January 2010, nearly 15 years after he was sentenced.[3] The Parole Board granted him parole in 2011, 2015, and 2018.[4] Each time, however, his parole was overturned after either the victim or the prosecutor appealed.[5]

---

[3] Because defendant committed his crimes before December 15, 1998, he was eligible for early parole consideration based on his accumulation of disciplinary credits. See MCL 791.233b; MCL 800.33(14), as amended by 1986 PA 322; MCL 800.34(5)(*iii*), as enacted by 1994 PA 218, effective December 15, 1998. Disciplinary credits are unavailable for specific assaultive crimes committed on or after December 15, 1998, or for any other crimes committed on or after December 15, 2000. MCL 800.34(5).

[4] McBrayer was released on parole in 2018 while the prosecution appealed. He returned to prison in 2020 after the prosecution prevailed in the circuit court.

[5] See *In re McBrayer Parole*, unpublished per curiam opinion of the Court of Appeals, issued August 29, 2019 (Docket No. 346841); *In re McBrayer Parole*, unpublished per

In November 2020, the Parole Board again considered McBrayer for parole. McBrayer's parole-guidelines score was +11, well above the threshold for a "high probability of parole."[6] Because of his score, the board was required to grant him parole absent substantial and compelling reasons to depart from the guidelines.[7] Reviewing the record, the Parole Board found facts to support a grant of parole, including that McBrayer had expressed remorse for his crimes, that he had spent 27 years in prison without any major misconduct, that he had completed sex-offender therapy,[8] and that recent risk assessments had placed him in a low-risk category. The board also determined that it had reasonable assurance that McBrayer was not a risk and would not be a menace to society, in part because he had previously been released on parole without any violations.[9] Consequently, the board granted McBrayer parole.

curiam opinion of the Court of Appeals, issued August 29, 2017 (Docket No. 336084). See also MCL 791.234(11) (allowing the prosecutor or the victim of the crime to appeal the Parole Board's grant of parole).

[6] A final parole-guidelines score of +3 or higher gives a prisoner a high probability of parole. *In re Elias Parole*, 294 Mich App 507, 518; 811 NW2d 541 (2011). See also Michigan Department of Corrections, *Parole Guidelines*, PD 06.05.100A (October 31, 2022), p 10, available at <https://perma.cc/MG8S-RNYW>.

[7] See MCL 791.233e(6), as enacted by 1992 PA 181; *In re Wilkins Parole*, 506 Mich 937, 937 (2020). Generally, references in this opinion to MCL 791.233e(6) refer to the pre-December 12, 2018, version of the statute, which controls in this case. See MCL 791.233e(14).

[8] McBrayer states in his brief that he completed sex-offender therapy while in prison and additional sex-offender therapy while out on parole between 2018 and 2020.

[9] Defendant's mandatory release date is in July 2026. This is his last opportunity to seek parole before his mandatory release date. Parole gives the state the opportunity to monitor defendant's reentry and ensure compliance with his parole conditions during the time between his release from prison and the termination of his parole.

The prosecutor appealed the Parole Board's decision in the circuit court. Reviewing the evidence that had been added to the record since McBrayer's most recent parole denial—including new risk assessments, a new parole-guidelines score, and a new case summary—the court highlighted negative comments in those documents and rejected favorable conclusions. Finding no improvement in McBrayer's circumstances from the time he was last considered for parole, the circuit court reversed the board's decision.

McBrayer and the Parole Board both sought leave to appeal in the Court of Appeals. The Court of Appeals granted the applications and affirmed the circuit court in a split decision, concluding that there were substantial and compelling reasons to depart from the parole guidelines. It emphasized the heinous nature of McBrayer's crimes, the impact of the crimes on the victim, the Court's skepticism about McBrayer's rehabilitation, and its concern with the efficacy of his parole plan.[10] "Because substantial and compelling reasons existed to deny parole," the Court of Appeals majority agreed with the circuit court that the board's grant of parole should be reversed.[11] Judge KATHLEEN JANSEN dissented, arguing that the circuit court had impermissibly substituted its own judgment about McBrayer's suitability for parole over that of the Parole Board.[12] McBrayer sought leave to appeal in this Court. In lieu of granting leave to appeal, we ordered oral argument on the application.[13]

---

[10] *McBrayer*, unpub op at 5-8.

[11] *Id*. at 8.

[12] *McBrayer* (JANSEN, J., dissenting), unpub op at 1-2.

[13] *In re McBrayer Parole*, 510 Mich 947 (2022). We asked the parties to address: "(1) whether 'substantial and compelling' circumstances existed such that the Parole Board erred in failing to deviate from the guidelines; (2) whether and to what extent the Parole

5

## II. STANDARD OF REVIEW

When the Parole Board grants parole to a prisoner, "the prosecutor of the county from which the prisoner was committed or the victim of the crime for which the prisoner was convicted" may appeal the board's decision.[14] "The appeal must be to the circuit court in the county from which the prisoner was committed, by leave of the court."[15] An appellant has the burden to prove that the Parole Board's decision was "a clear abuse of discretion" or that the decision violated "the Michigan Constitution, a statute, an administrative rule, or a written agency regulation . . . ."[16] If a party then appeals the circuit court's decision in the Court of Appeals, the standard of review remains the same abuse-of-discretion standard.[17] "It is the judgment of the Parole Board, not the circuit court, that is entitled to deference in this appeal from the decision of an administrative agency."[18] In short, a "reviewing court may not substitute its judgment for that of the Parole Board."[19]

---

Board was required to consider the appellate opinions reversing its prior grants of parole to the appellant; and (3) whether and to what extent those prior appellate opinions should inform review of the Parole Board's most recent exercise of discretion." *Id*. at 947. Because we do not believe that answering the second two questions is necessary to resolve this case, we decline to address them here and leave them for another day.

[14] MCL 791.234(11).

[15] *Id*.

[16] MCR 7.118(H)(3)(a) and (b). See *Elias*, 294 Mich App at 538.

[17] *Wilkins*, 506 Mich at 937.

[18] *Id*.

[19] *Hopkins v Parole Bd*, 237 Mich App 629, 633; 604 NW2d 686 (1999).

## III. ANALYSIS

McBrayer and the Parole Board argue that the lower courts failed to respect the Legislature's grant of discretion to the board, improperly substituting their judgment for that of the board. We agree. Although the Court of Appeals majority acknowledged that the Parole Board's decisions are reviewed for an abuse of discretion, its analysis effectively reweighed the evidence without affording proper deference to the board. This contravened the scheme established by the Legislature. Reviewing courts must recognize that, even if there are substantial and compelling reasons to deny parole, a grant of parole is not an automatic abuse of discretion.

### A. DEPARTURE FROM THE PAROLE GUIDELINES

The parole guidelines set out factors—such as criminal history, type of offense, conduct in prison, mental health, and age—for determining whether a prisoner merits parole.[20] Parole-eligible prisoners receive scores under these factors. A prisoner's score places him or her into one of three categories: high probability of parole, average probability of parole, or low probability of parole.[21] Usually, the Parole Board must grant parole to a prisoner with a "high probability" parole-guidelines score.[22] In some cases,

---

[20] PD 06.05.100, Attachment A.

[21] *In re Haeger Parole*, 294 Mich App 549, 560-561; 813 NW2d 313 (2011); PD 06.05.100, Attachment A, p 10.

[22] *Wilkins*, 506 Mich at 937. We do not overlook MCL 791.233(1)(a)'s requirement that "[a] prisoner must not be given liberty on parole until the [Parole Board] has reasonable assurance, after consideration of all of the facts and circumstances, including the prisoner's mental and social attitude, that the prisoner will not become a menace to society or to the public safety." This requirement is addressed both by a proper application of the parole guidelines and by accounting for any substantial and compelling reasons for departure from the guidelines. See former MCL 791.233e(6).

however, the Parole Board may choose to depart from the guidelines and deny parole to prisoners with high-probability-of-parole scores.

The version of MCL 791.233e(6) in effect at the time McBrayer committed his offenses governs any departure from the parole guidelines in this case. Relevant here, former MCL 791.233e(6) provided as follows:

> The parole board may depart from the parole guideline by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines. A departure under this subsection shall be for substantial and compelling reasons stated in writing. The parole board shall not use a prisoner's gender, race, ethnicity, alienage, national origin, or religion to depart from the recommended parole guidelines.[23]

Under this provision, the Parole Board may depart from the guidelines and deny parole to a prisoner with a "high probability" parole score when there are "substantial and compelling reasons" to do so.[24] Importantly, when such reasons exist, the board "*may*

---

[23] Effective December 12, 2018, the Legislature amended MCL 791.233e(6), adding the requirement that a departure from the guidelines "*must* be for substantial and compelling *objective* reasons . . . ." MCL 791.233e(6), as amended by 2018 PA 339 (emphasis added). The Legislature has also amended MCL 791.233e(7) to add an exhaustive list of "[s]ubstantial and compelling objective reasons for a departure from the parole guidelines for a prisoner with high probability of parole . . . ." *Id*. Those amendments apply only to prisoners whose controlling offense was committed on or after the December 12, 2018. MCL 791.233e(14), as amended by 2022 PA 28. As stated, because defendant committed his offenses before that date, the former version of MCL 791.233e(6) applies here. The current version of the statute narrows the Parole Board's ability to depart from the guidelines. But it does not alter the deferential review that reviewing courts must give to the Parole Board's decisions.

[24] In *People v Babcock*, 469 Mich 247, 258; 666 NW2d 231 (2003), we defined "substantial and compelling reason" in the context of departure from the sentencing guidelines as "an objective and verifiable reason that keenly or irresistibly grabs our attention; is of considerable worth in deciding the length of a sentence; and exists only in exceptional cases." (Quotation marks and citation omitted.) When the former version of

8

depart from the parole guidelines . . . ."[25]  But the board is not required to do so because the use of "may" vests discretion in the Parole Board.[26]

## B. COURT REVIEW OF PAROLE BOARD DECISION NOT TO DEPART FROM THE GUIDELINES

The Court of Appeals majority considered whether there were substantial and compelling reasons for departure from the guidelines and ended its analysis there.  That analysis was incomplete.  The mere existence of substantial and compelling reasons for departure is not sufficient for a reviewing court to conclude that the Parole Board abused its discretion by choosing not to depart from the guidelines.  If that were the case, courts could effectively disregard the board's discretion upon concluding that there are reasons for departure that are substantial and compelling.  That would not track with the statutory scheme.[27]  The proper analysis has two parts.  First, as the Court of Appeals did, a reviewing court must consider whether there are substantial and compelling reasons to deny parole to a prisoner with a high-probability guidelines score.  If not, then no departure is warranted.  But if substantial and compelling reasons exist and the Parole Board nonetheless granted parole, the second question is whether the choice not to depart

MCL 791.233e applies, however, subjective factors can be used in determining whether there are substantial and compelling reasons to depart from the parole guidelines.  See *Elias*, 294 Mich App at 543.

[25] Former MCL 791.233e(6) (emphasis added).

[26] See *Warda v City Council of Flushing*, 472 Mich 326, 332; 696 NW2d 671 (2005) (noting that the Legislature's use of the word "may" implies discretion).

[27] Former MCL 791.233e(6); *Warda*, 472 Mich at 332.

9

constituted a clear abuse of discretion.[28]  Consistently with the default definition of that standard, the Parole Board abuses its discretion when it chooses an outcome that is outside the range of reasonable and principled outcomes.[29]

This standard entitles the Parole Board to great deference,[30] and we reiterate that reviewing courts must not substitute their own judgment for that of the board.[31]  As contemplated by the statutory scheme, there might be instances when the reasons for departure are significant enough that *not* departing from a high-probability guidelines recommendation would not be a reasonable and principled outcome.  In those cases, a grant of parole would be an abuse of discretion, and a reviewing court should reverse the Parole Board.[32]  But when it would be a reasonable and principled outcome not to depart from the guidelines, the Parole Board does not abuse its discretion by declining to do so.

---

[28] MCR 7.118(H)(3)(b).

[29] See *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006).

[30] See *People v Skinner*, 502 Mich 89, 136; 917 NW2d 292 (2018) (noting that the abuse-of-discretion standard is " 'deferential' ") (citation omitted).  Cf. *Alken-Ziegler, Inc v Waterbury Headers Corp*, 461 Mich 219, 228 n 5; 600 NW2d 638 (1999) (observing that we give " 'great deference' " in matters involving the discretion of trial courts).

[31] *Hopkins*, 237 Mich App at 633.

[32] The statute does not require the Parole Board to explain its reasoning or even acknowledge the existence of substantial and compelling reasons for departure from the guidelines if it chooses not to depart.  See former MCL 791.233e(6) (including no written-explanation requirement if the board does not depart from the parole guidelines).  This raises the possibility of the Parole Board abusing its discretion by failing to recognize substantial and compelling reasons for departure that should have led it to deny parole.  The Parole Board's failure to recognize the existence of substantial and compelling reasons for departure does not insulate its decision from judicial review.  To facilitate the statutory appellate scheme, we think it is necessary that reviewing courts can identify from the record substantial and compelling reasons for departure, even if the Parole Board has not explicitly

## C. THE PAROLE BOARD DID NOT ABUSE ITS DISCRETION

In this case, the Court of Appeals majority failed to independently consider whether the Parole Board abused its discretion. Instead, the majority simply concluded that, because there were substantial and compelling reasons for departure from the parole guidelines, the Parole Board had abused its discretion. The Court of Appeals identified legitimate factors weighing against parole, including the extent of the harm suffered by the victim, negative comments in McBrayer's risk evaluations, its skepticism about the extent of his rehabilitation, and its concerns about the adequacy of his parole plan, which placed him in a populous area relatively near his victim.[33] We agree that these are serious considerations.

Even so, the Parole Board supported its decision with a significant amount of relevant evidence favorable to McBrayer's case for parole, including McBrayer's statements accepting responsibility for his crimes and the harm done to his victim, his expressions of remorse, his completion of sex-offender therapy and substance-abuse programming, his 27 years of incarceration with a clean prison record, risk assessments concluding that his statistical risk was low, and a parole plan including GPS monitoring and prohibition of entry into Macomb County. At least one member of the Parole Board interviewed McBrayer and concluded that parole was a suitable outcome. Taking all this

---

addressed them. See MCL 791.234(11). See also MCR 7.118(H)(3)(b). Otherwise, the board could elude review by ignoring such issues.

[33] McBrayer's parole plan places him in a county next to the county in which the victim lives.

11

into account, after reviewing the facts and circumstances of McBrayer's case, the board decided to parole him rather than depart from the guidelines.

There can be reasonable disagreement with the Parole Board's decision to parole McBrayer; the Court of Appeals majority opinion shows as much. But the Legislature assigned to the Parole Board, and not to the judicial branch, the authority to choose among reasonable and principled outcomes.[34] The Legislature has created a criminal justice system in which offenses are typically punished by indeterminate sentences, represented by ranges of months or years. Within this system, courts have significant discretion over sentencing, including setting the minimum and maximum sentences.[35] After a prisoner has been sentenced and any appeals have been exhausted, however, the courts' primary role in determining the length of a prisoner's sentence has ended. Instead, the Legislature has tasked the Parole Board with determining whether and when prisoners will be released on parole.[36] Although courts may, in some instances, review the Parole Board's decisions and ensure compliance with the law, the judicial branch must nonetheless respect the Legislature's choice to give discretion over whether to grant parole to the Parole Board.

Given the considerations favoring parole in this case, even when compared with those weighing against, we conclude that it was within the range of reasonable and principled outcomes for the board not to depart from the parole-guidelines recommendation

---

[34] Former MCL 791.233e(6). See *Maldonado*, 476 Mich at 389.

[35] See *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015).

[36] MCL 791.234(11). See *Jones v Dep't of Corrections*, 468 Mich 646, 652; 664 NW2d 717 (2003).

to parole McBrayer.[37] This is not a matter of deciding the best course as we would choose it. It is a matter of deferring to the Parole Board, the entity chosen by the Legislature to make parole determinations, when it reaches a conclusion within the bounds of law.[38] Ultimately, we conclude that the board did not abuse its discretion by paroling McBrayer.

## IV. CONCLUSION

For the reasons stated in this opinion, the Court of Appeals erred by affirming the circuit court's reversal of the Parole Board's decision to parole McBrayer. Accordingly, we reverse the judgments of the Court of Appeals and of the circuit court, and we reinstate the decision of the Parole Board granting McBrayer parole.

Brian K. Zahra
Elizabeth T. Clement
Richard H. Bernstein
Megan K. Cavanagh
Elizabeth M. Welch
Kyra H. Bolden

---

[37] We also note, as the Court of Appeals dissent did, that defendant's mandatory release date is in July 2026. *McBrayer*, (JANSEN, J., dissenting), unpub op at 2. So the question is not whether defendant will be released. He will be. The question is whether to release defendant from prison for a few years under the watchful eye of a parole officer or, alternatively, to release him from custody in a few years with no supervision or reentry services. See *Jones*, 468 Mich at 652 (noting that parole is a release from the confines of prison but not a release from custody). The Parole Board clearly prefers the first option, and that decision is entitled to great deference.

[38] *Hopkins*, 237 Mich App at 633.

13

STATE OF MICHIGAN

SUPREME COURT

---

*In re* Parole of RICHARD ALLEN
McBRAYER.

---

MACOMB COUNTY PROSECUTOR,

        Appellee,

v                                                                    No. 164311

RICHARD ALLEN McBRAYER,

        Appellant,

and

MICHIGAN PAROLE BOARD,

        Intervenor.

---

BOLDEN, J. (*concurring*).

I agree with the majority that the Court of Appeals did not properly assess whether the Parole Board abused its discretion. Further, I agree that the decision of the Parole Board to grant parole was within the range of principled outcomes and that it thus did not abuse its discretion when making that decision. However, I understand why the lower courts have struggled with this case. I write separately to further tease out some of the facts and procedural history that made this case such a difficult test for the courts.

## I. RELEVANT FACTS AND PROCEDURAL HISTORY

I agree fully with the majority's recitation of facts. However, it is necessary to point out that the courts and the Parole Board have both struggled, for good reason, with this case.

These proceedings stem from allegations that appellant, Richard McBrayer, sexually abused his stepdaughter when she was 12 to 14 years old. McBrayer was charged in two separate cases with a total of five counts of first-degree criminal sexual conduct (CSC-I), MCL 750.520b(1)(b). He pleaded guilty to two counts of CSC-I in exchange for the dismissal of the remaining charges. He was sentenced to serve 20 to 40 years in prison.

The first time McBrayer's case was reviewed for parole, the Parole Board denied parole. In 2011, the Parole Board reviewed McBrayer's case for parole again. His guidelines now reflected a high probability of parole, so parole was granted, contingent on successful completion of residential sex-offender programming. That determination was appealed, and the circuit court reversed—a decision that neither the Parole Board nor McBrayer appealed.

The Parole Board reviewed McBrayer's case for parole for a third time in 2014; the board denied parole. The Parole Board reviewed his case again in 2015. In a parole interview, McBrayer explained that he intended to live with his nephew at a specific address in Louisiana once he was released on parole. The Department of Corrections rejected this placement upon learning that the individual who resided at the address provided by McBrayer did not know McBrayer. The Parole Board nonetheless granted parole in McBrayer's case, with an agreement he would live in Macomb County.

2

The victim appealed in the circuit court under MCL 791.234(11), objecting to the grant of parole; the court reversed the Parole Board's decision. In doing so, the circuit court concluded that the Parole Board had "violated its duty to consider all of the true facts and circumstances," but the court stayed the reversal decision pending appeal. *In re McBrayer Parole*, unpublished opinion of the Macomb Circuit Court, issued November 18, 2016 (Case No. 2016-001586-AP), p 14. McBrayer sought leave to appeal in the Court of Appeals, which affirmed the circuit court's reversal of the Parole Board's grant decision. *In re McBrayer Parole*, unpublished per curiam opinion of the Court of Appeals, issued August 29, 2017 (Docket No 336084) (*McBrayer I*). Especially concerning to the Court of Appeals was an interview the victim conducted with the Parole Board in which she detailed lingering physical symptoms, emotional distress, and fear that McBrayer would come after her or her daughter out of revenge for her reporting him. *Id*. at 4. The Court of Appeals was also concerned about McBrayer being paroled to Macomb County, where he would be in close proximity to the victim. *Id*. at 5. This, coupled with the fact that the Parole Board relied on a therapy-termination report from 2010, led the Court of Appeals to conclude that the Parole Board had abused its discretion. *Id*. McBrayer sought leave to appeal in this Court; we denied the application. *In re McBrayer Parole*, 501 Mich 1038 (2018) (*McBrayer II*).[1]

In 2018, the Parole Board once again granted parole to McBrayer. The prosecution appealed that decision, and the circuit court reversed the grant of parole. The Parole Board

---

[1] The effect of these decisions was that McBrayer was released from prison when the Parole Board granted him parole in 2016; he was reincarcerated when this Court ended his appeal by denying his application in 2018.

3

sought leave to appeal, and the Court of Appeals granted the application and affirmed the circuit court's reversal order. *In re McBrayer Parole*, unpublished per curiam opinion of the Court of Appeals, issued August 29, 2019 (Docket No 346841) (*McBrayer III*). The Court of Appeals again concluded that nothing had changed and that the Parole Board had abused its discretion. In particular, there was a concern that McBrayer was placed in Macomb County, in close proximity to the victim. This, despite the facts that McBrayer had explained to the Parole Board that he did not want to live there because of the proximity and that the victim believed she had witnessed defendant in his vehicle at a stop sign near her home during his prior release. *Id*. at 5-6. The Court of Appeals also was unconvinced that there was meaningful change in any of the assessments, given that a 2018 assessment found that McBrayer had continued to minimize his actions in relation to the conviction offenses, had clinically deviant sexual interests, and had a placement plan that did not adequately avoid placing McBrayer in close proximity to the victim. *Id*. at 6. Therefore, again, the Court of Appeals found a clear abuse of discretion. *Id*. at 7.

The Parole Board granted parole to McBrayer again in 2020, the decision that is the subject of this appeal. The Parole Board provided supplemental explanations for its decision, including that McBrayer had accepted responsibility, had expressed remorse and empathy, had a high-probability-of-parole score and a low-supervision score, had successfully completed a sex-offender program, did not have a parole violation while on prior release, and had obtained employment upon his prior release. Further, the Parole Board noted that McBrayer would be released to Oakland County with a GPS device that would prohibit entry into Macomb County, where the victim resided.

4

The victim appealed and sought a stay of the Parole Board's determination pending appeal. The circuit court reversed the parole decision again. The Parole Board sought leave to appeal; the Court of Appeals granted the application and again affirmed. *In re McBrayer Parole*, unpublished per curiam opinion of the Court of Appeals, issued March 10, 2022 (Docket Nos. 357712 and 357720) (*McBrayer IV*). The Court of Appeals concluded that there were substantial and compelling reasons to depart from the guidelines despite McBrayer's high-probability-of-parole score. *Id*. at 4-5. The version of MCL 791.233e(6) in effect at the time McBrayer committed his offenses[2] granted the following authority to the Parole Board:

> The parole board may depart from the parole guidelines by denying parole to a prisoner who has a high probability of parole as determined under the parole guidelines or by granting parole to a prisoner who has a low probability of parole as determined under the parole guidelines. A departure under this subsection shall be for substantial and compelling reasons stated in writing. The parole board shall not use a prisoner's gender, race, ethnicity, alienage, national origin, or religion to depart from the recommended parole guidelines.

The Court of Appeals determined that there were substantial and compelling reasons to depart from McBrayer's high-probability-of-parole score because, among other things, it was concerned again with releasing McBrayer to a location so close to the victim. *McBrayer IV*, unpub op at 6-7.

Although the Court of Appeals has considered the decision to grant parole to McBrayer three times already, one concern has remained consistent: The Court of Appeals has struggled with balancing concern for the victim's safety and well-being with an

---

[2] See MCL 791.233e, as enacted by 1992 PA 181. All references to MCL 791.233e(6) in this opinion are to this version of the statute.

adequate geographic placement for McBrayer. Those concerns are not surprising given that neither the victim nor McBrayer would like McBrayer to be released from custody to a location in close proximity to the victim. I agree with the majority's decision to reverse because the Parole Board adequately explained its rationale for releasing McBrayer to parole. However, I write separately to further explain why this decision is correct.

## II. DEFERENCE TO THE PAROLE BOARD

Judicial review of a Parole Board's decision to grant or deny parole is limited to review for abuse of discretion. *In re Elias Parole*, 294 Mich App 507, 538; 811 NW2d 541 (2011). An abuse of discretion occurs when a decision falls outside the range of principled outcomes. *People v Zitka*, 325 Mich App 38; 922 NW2d 696 (2018) (quotation marks and citation omitted). Further, the starting point with McBrayer was his high-probability-of-parole score. As relevant here, in order for the Parole Board to deny parole to someone with a high-probability-of-parole score, the Parole Board must provide "substantial and compelling reasons stated in writing." Former MCL 791.233e(6).

Because McBrayer's parole-guidelines score placed him at a high probability of parole, to deny him parole, the Parole Board would have had to have found substantial and compelling reasons to deviate from the decision to grant parole. Once the Parole Board's decision to grant parole was issued, the appellate courts were required to review the appealed decision for an abuse of discretion. In other words, for the circuit court or the Court of Appeals to reverse the Parole Board's grant of parole, that court must have concluded that the Parole Board's determination—that there were not substantial and compelling reasons to depart from the statutory requirement to grant parole—was outside

6

the range of reasonable and principled outcomes. I agree with the majority—the lower courts did not apply the proper standard and did not reach the correct result.

Nonetheless, I find it concerning that the Parole Board chose McBrayer's geographic location upon release to be in such close proximity to the victim. The victim has repeatedly expressed concern about McBrayer's placement and has clearly demonstrated continuing physical and emotional pain and suffering because of the abuse she suffered as a child. The victim has repeatedly challenged the Parole Board determinations to grant parole. And the victim believes she saw defendant while driving during his last release from prison. Plus, McBrayer himself has advocated for placement that is not in close proximity to the victim. However, given the great amount of deference we afford decisions of the Parole Board, especially with the parole condition that McBrayer may not enter Macomb County, I also agree with the result reached by the majority to reinstate the decision of the Parole Board.[3]

### III. CONCLUSION

I agree with the majority's decision to reverse the Court of Appeals and reinstate the determination of the Parole Board. The Court of Appeals erred by concluding that the Parole Board abused its discretion in granting McBrayer parole. Although this case presented a tremendously difficult challenge, to reverse the Parole Board requires a

---

[3] Notably, there are tools at the disposal of the Parole Board to adjust McBrayer's placement if the Parole Board chooses to do so. See MCL 791.236(3) ("A parole order may be amended at the discretion of the parole board for cause or to adjust conditions as the parole board determines is appropriate.").

showing that the determination to grant parole was outside the range of reasonable and

principled outcomes.  That showing has not been made.


Kyra H. Bolden


VIVIANO, J. (*nonparticipation statement*).  I write separately to briefly explain my decision not to participate in consideration of this matter.  I recused myself from one of defendant's previous appeals of the circuit court's reversal of a Parole Board decision because my sister, Judge Kathryn Viviano, was the presiding circuit court judge in the proceedings. *In re McBrayer Parole*, 501 Mich 1038 (2018).  Although my sister was not the presiding circuit court judge in the current appeal, in the course of reviewing this case, it became apparent that the issues presented would require me to substantively review one of my sister's prior decisions.  Therefore, I decline to participate in this matter.